Leavens v. Hoover.

No. 18,870.

K. G. LEAVENS, *Appellee,* v. JOHN J. HOOVER, *Appellant:*

SYLLABUS BY THE COURT.

1. PROMISSORY NOTE — *Innocent Holder* — *Restricting Cross-examination.* In an action upon a promissory note, one of the principal issues being whether the plaintiff was a holder in due course, it is held that no prejudicial error was committed in restricting his cross-examination concerning the circumstances under which he acquired it.

2. TRIAL—*No Prejudicial Error.* Various trial rulings examined, and held not to require a reversal.

Appeal from Osborne district court; RICHARD M. PICKLER, judge. Opinion filed January 9, 1915. Affirmed.

*S. N. Hawkes,* of Stockton, and *N. C. Else,* of Osborne, for the appellant.

*J. K. Mitchell,* of Osborne, *Justin D. Bowersock, Lester W. Hall, Inghram D. Hook,* and *Robert B. Fizzell,* all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

MASON, J.: K. G. Leavens obtained a judgment upon a promissory note against John J. Hoover, who appeals. The note was executed to W. E. Raiguel by Hoover, who

defended on the ground that it was procured by fraud, in that false representations were made to him with respect to the value of shares of stock in a corporation, for the purchase of which it was given. Leavens claimed as an innocent purchaser. No special findings were made and it is not certain whether the jury found that the allegations of fraud were not sustained, or that this defense was not available against the plaintiff.

The petition alleged a commercial endorsement by Raiguel, which was denied under oath. Raiguel's name was attached to an endorsement on the note, but the defendant maintains that there was no evidence whatever of the genuineness of the signature, and that therefore this issue should not have been submitted to the jury. There was circumstantial evidence which probably warranted the inference that Raiguel made or authorized the endorsement, but this need not be determined, as there was direct evidence on the subject. The defendant testified that he had had some correspondence with Raiguel. He was then asked if he was sufficiently familiar with his handwriting to identity it positively. The record shows this answer: "I would think I could positively, I never had sufficient knowledge of his signature to the affidavit." He was then asked if the signature so far as he knew was genuine, and answered: "So far as I know it is his signature. I am not sufficiently acquainted with his handwriting to be positive." It is suggested that the context shows that the word "not" must have been omitted from the record of the first answer quoted. This may be granted, but the fair interpretation of the answers is that, having some familiarity with Raiguel's handwriting, the defendant believed the signature to be genuine. There being nothing elsewhere in the record to suggest a doubt on the subject this evidence was sufficient to support a finding of its genuineness.

The plaintiff contends that it is really immaterial whether or not he was an innocent purchaser of the

note, because the defendant's own evidence showed that no actionable misrepresentations were made to him, and that his subsequent conduct prevented his relying on that defense. The defendant asserts that misrepresentations were made to him regarding the value of the corporate stock for which the note was given. The plaintiff argues that in view of the defendant's opportunity for investigation the case is within the rule that . false statements regarding values, being matters of opinion rather than of fact, do not in legal contemplation constitute fraud. (*Else v. Freeman*, 72 Kan. 666, 83 Pac. 409; 20 Cyc. 49.) The defendant, however, among other matters, some of which were of a similar character, alleged that false statements were made to him concerning the kind of water rights appurtenant to lands owned by the corporation. These were representations of fact upon which the defendant might have a right to rely. The plaintiff also insists that because the defendant retained the stock after becoming fully advised of the situation, he is precluded from asking a rescission of the contract. The defendant relied upon the damages he suffered, as an offset to the note, and for that purpose no return of the stock was necessary.

The note was dated July 13, 1908, and was due in two years from that time. The plaintiff testified that he purchased it in the early part of 1909. On his cross-examination this colloquy took place:

"What was the consideration for this note you paid?
"I paid for that note and some others for my services to Van Asmus.
"What were those services? Introducing to people?
"Yes, and assisting him."

A little later he was asked, "When did you introduce Mr. Van Asmus to these gentlemen in Kansas City?" An objection to the question as incompetent, irrelevant and immaterial was sustained, and of this ruling complaint is made. In reply to this the plaintiff says in his brief:

"There was no intimation whatever that a contract existed between plaintiff and Van Asmus under which the former received the note 18 months before he paid for it, and such was not the case. The transaction was executed on both sides early in 1909. As plaintiff testified, he 'purchased' the note at that time, and the lower court did not abuse its discretion in refusing to allow defendant to cover this matter again."

This is not a sufficient answer to the objection. The defendant was entitled to cross-examine the witness in detail for the very purpose of determining the accuracy of his general statement, which was of the nature of a conclusion. The matter might possibly have become important, for one who pays for a note after having notice of an infirmity is not a holder in due course (Gen. Stat. 1909, § 5307), although it is said that where a note is transferred as payment for personal property a delivery of all the property before notice is not indispensable (7 Cyc. 943). However, the inquiry was not pressed further. The question objected to was not asked in direct connection with the testimony as to the time and manner of the plaintiff's acquiring the note. No statement of its purpose is shown, and there is no affirmative showing that the attention of the trial court was directed to the phase of the matter that is now presented. In the course of his rebuttal evidence the plaintiff testified as follows:

"State the circumstances under which you came into possession of this note?

"For services rendered Van Asmus.

"And you paid for this a valuable consideration? State whether or not you paid for this a valuable consideration? . . . Go ahead and state the circumstances under which you became the owner of this note?

"In payment of my services."

The trial judge then asked these questions, among others, receiving the answers indicated:

"When did you first see this note—the three-thousand-dollar note?

"The first part of 1909.

"How did you get possession of the note?

"Van Asmus had this note with some others and he wanted me to assist in floating his proposition in Kansas City and he told me if I would do so he would turn these notes over to me."

On cross-examination he was asked when he had his first talk with Van Asmus about the notes and replied that he could not exactly remember; that he received the notes shortly afterwards. The question as to when he had introduced Van Asmus was not renewed, nor was any further question asked bearing upon the time when the plaintiff's services in payment of the note were performed. In this situation it can not be said that in sustaining the objection to the single question the court committed reversible error. It was not shown that at any time before the action was brought the plaintiff was advised of the claim of fraud.

The plaintiff also testified on his original examination that before he purchased the note Van Asmus told him what it was given for, but the court sustained an objection to a further question as to what it was. This was perhaps too close a restriction upon the cross-examination. But it is not made to appear that the ruling was prejudicial. The inquiry was not extended or renewed, and there was at no time any controversy as to what the note was given for. The statute (Civ. Code, § 307) does not require a litigant to show what answers would have been returned to the excluded questions, in order to urge a new trial on the ground of the denial of a right to cross-examine the adverse party (*McIntosh v. Oil Co.*, 89 Kan. 289, 131 Pac. 151). But it does forbid the granting of a new trial without an affirmative showing that the ground relied on affected the result. We do not think the record can be said to show a probability that any prejudice resulted from the rulings complained of. It is suggested that "if Van Asmus told plaintiff what the note was given for, then plaintiff could not be an

innocent purchaser of the note." That does not follow, for a statement in a note of the transaction which gave rise to it does not affect it negotiability. (Gen. Stat. 1909, § 5256; *Bank v. Lightner*, 74 Kan. 736, 88 Pac. 59.)

An instruction was asked, which the court refused, that in determining the question of the plaintiff's right to be deemed an innocent purchaser the jury might take into consideration all the evidence of the circumstances under which he acquired the note, including his business relations with the person from whom he received it. It might well have been given, but its omission was not error, especially in view of the fact that the jury were told that in determining the existence or nonexistence of any fact they could take into consideration all the evidence tending to prove or disprove it, including the surrounding circumstances.

Complaint is made of an instruction that evidence of fraud in the procuring of the note was not to be considered in deciding whether the plaintiff was an innocent purchaser. No misapprehension can have resulted from this, for the jury were elsewhere told that if such fraud were shown, the burden of proving want of notice was on the plaintiff.

An instruction was given to the effect that although fraud may have been practiced upon the defendant in the procuring of the note, no sum in the way of damages therefor could be allowed to the defendant, if the plaintiff knew nothing of the fraud and was not a party to it. This is complained of by the defendant as ignoring the requirement that the plaintiff, to have the benefit of his ignorance of the fraud, must have been a purchaser for value, in due course of business, and before maturity. The plaintiff seeks to justify the instruction on the ground that there was no conflict in the evidence as to these matters, and contends that in any event no prejudice resulted, inasmuch as they were fully covered in other parts of

the charge.   We are inclined to believe that this instruction referred only to the possibility of damages being found in excess of the amount of the note, and becoming the basis of a money judgment against the plaintiff, in which case it was unobjectionable.

The last instruction objected to reads:

"If the plaintiff purchased the note before due, and for a valuable consideration, then before he would be chargeable with notice of any infirmity in the instrument he must have actual knowledge of the defect or defects as claimed by the defendant, or knowledge of such facts that his action in taking the instrument amounted to bad faith upon his part."

The defendant criticises this on the ground that "it leaves out of consideration the element of good faith, want of notice and in the usual course of business, which must exist in order to protect a purchaser of a negotiable instrument."   The statute uses the term "holder in due course" to describe one who holds a note free from defenses available to prior parties among themselves.   (Gen. Stat. 1909, § 5310.)   It specifies what is necessary to constitute such a holder (Gen. Stat. 1909, § 5305), and his obtaining the paper "in the usual course of business" is not named as one of them, that ground being covered by the phrase "that he took it in good faith and for value."   The instruction embodied the requirement of good faith by making bad faith equivalent to notice.   Its purpose was to define the term "notice," which it did substantially in the words of the statute (Gen. Stat. 1909, § 5309).

The judgment is affirmed.