No. 20,655.

THE FIRST NATIONAL BANK OF HERINGTON, *Appellant*, v. THE LYONS EXCHANGE BANK, *Appellee*.

SYLLABUS BY THE COURT.

1. DRAFT — *Fraudulently Procured — Indorsed by Payee Without Consideration—Indorsee Not an "Innocent Holder in Due Course."* A debtor of one bank fraudulently procured another bank to issue to him a draft payable individually to the president of the bank to which he was indebted. The president took the draft from the debtor and delivered to him the evidences of his indebtedness and securities, at the same time indorsing the draft individually and delivering it to the bank. He had paid nothing for the draft and received no consideration for indorsing it. *Held*, the bank was not, under these circumstances, a holder in due course.

2. SAME. When the creditor bank learned that the draft had been protested, it negotiated with the debtor and secured from him a restoration of the securities and evidences of debt which it had surrendered. *Held*, that in any event, having lost nothing by the transaction, it could not claim the protection afforded a holder in due course.

Appeal from Rice district court; DANIEL A. BANTA, judge. Opinion filed February 10, 1917. Affirmed. Opinion denying a rehearing filed April 7, 1917.

*M. B. Nicholson, W. J. Pirtle,* both of Council Grove, *G. W. Hurd, Arthur Hurd,* and *Bruce C. Hurd,* all of Abilene, for the appellant.

*Samuel Jones, Ben Jones, J. W. Brinckerhoff,* and *W. W. Stahl,* all of Lyons, for the appellee.

The opinion of the court was delivered by

PORTER J.: This is an action by one bank to recover from another bank the amount of a draft which was protested and

not paid.   There was a judgment in favor of defendant and
the plaintiff appeals.

On September 1, 1914, Frank O. Johnson was indebted to
the First National Bank of Herington to the amount of $2407,
for which the bank held his notes secured by certain chattel
mortgages.   He had also left with the bank as additional se-
curity a purported note for $2200, dated May 19, 1914, pay-
able to himself or order, and falling due September 19, 1914,
which was signed with the names of fictitious persons.   This
note had been in the bank's possession for some time, but was
not put up as collateral security until June 2, 1914.   On Sep-
tember 1, when the notes held by the Herington bank were
due, Johnson went to Lyons, in Rice county, and procured from
defendant, the Lyons Exchange Bank, a draft for $2407 pay-
able to F. E. Munsell or order.   Munsell was president of the
Herington bank, but Johnson was not indebted to him.   In
pretended payment for the draft Johnson gave the Lyons bank
his check drawn on the Delavan State Bank, representing that
he had funds on deposit there sufficient to meet it.   He had
no account in the Delavan bank.   Relying upon the fraudulent
representations, the Lyons bank issued the draft which is the
subject of this action, accepting Johnson's check in payment
therefor.   Johnson took the draft to the Herington bank and
stated to Mr. Munsell that he had obtained it in payment of
the $2200 collateral note, and desired to take up that note and
to pay all his indebtedness.   Munsell indorsed the draft in his
own name and delivered it to the bank.   At the same time he
turned over to Johnson the notes the bank held against him,
and also handed him the collateral note without marking it
paid.   It had never been indorsed by Johnson.   Immediately
upon being notified that the defendant had stopped payment
on the draft the plaintiff repossessed itself of the securities
surrendered to Johnson when the draft was accepted, and
procured from Johnson and wife a chattel mortgage secur-
ing all his indebtedness to the bank, and turned back to him
the draft.   It sent the mortgage to the register of deeds for
record.   Subsequently, upon the advice of its attorneys, the
bank withdrew the mortgage from record, and in the presence
of Johnson destroyed it.

The petition alleged that Johnson indorsed and delivered
the draft of Munsell as president to and for the use of the

bank, in payment of an indebtedness due from Johnson to the bank, and that the bank accepted it in full payment and surrendered to Johnson his notes and securities and canceled his indebtedness.

The answer stated the facts relied upon by defendant showing that the draft had been obtained by false and fraudulent representations of Johnson and without consideration. It alleged that the Herington bank was not at the time the action was brought, nor at any time, a good faith holder of the draft in due course. It is alleged that F. E. Munsell, president of the bank, knew Johnson and the facts concerning the fictitious note; that Munsell delivered the draft to the bank without any liability on his part and received no consideration for indorsing the same; that the securities held by the bank on Johnson's indebtedness were worthless, and that the bank parted with nothing of value in consideration for the delivery of the draft.

One of the principal defenses alleged in the answer was that after plaintiff was informed of the manner in which Johnson obtained the draft it negotiated with him and accepted from him a good and sufficient chattel mortgage upon his personal property as security for all his indebtedness. In the amended answer defendant sets out the facts showing that after the draft had been protested the plaintiff restored itself to the position in which it was prior to the time the draft came into its possession.

1. Complaint is made of two instructions, one of which charged that if the jury believed from the evidence that the instrument sued upon was made payable to F. E. Munsell by the maker thereof, and that the plaintiff bank received the same by indorsement from Munsell and that the indorsement was without consideration, then plaintiff would not be a holder in due course and for value. The second of these instructions reads:

"If you believe from the evidence that the plaintiff is not a holder in due course, for value, as hereinbefore defined; and you further believe from the evidence that the issue of the draft sued upon was procured by Frank O. Johnson by false and fraudulent representations, and that the said draft was issued, no consideration having been paid therefor, then, and in such case, you should find for the defendant."

The defendant concedes that if these instructions state the law correctly there was nothing left for the jury but to find for the defendant in view of the undisputed evidence. The first instruction merely states the law as to what is meant by "a holder in due course." To constitute a holder in due course the instrument must be negotiated, that is, must be held by indorsement if payable to order, or by delivery if payable to bearer. (Gen. Stat. 1915, § 6557; *Bank v. Vaughn,* 96 Kan. 402, 151 Pac. 1118; *Nelson v. Southworth,* 93 Kan. 532, 539, 144 Pac. 835.) In the case last cited it was said that where there has been no indorsement the holder's rights "are no greater than those of the payee." (p. 539.) Munsell was not a holder of the draft in due course of business, because he was the payee. Was the plaintiff a holder in due course? Among the conditions required by the negotiable instruments law to constitute a holder in due course is, "that he took it in good faith and for value." (Gen. Stat. 1915, § 6579, subdiv. 3.) Munsell was president of the bank, and whatever he knew concerning the draft the bank knew; and as between Munsell and the bank, the latter was not a holder for value. It paid nothing to Munsell and it knew he had parted with no consideration when he obtained the draft.

The plaintiff relies upon the case of *Mann v. National Bank,* 34 Kan. 746, 10 Pac. 150. In that case a note was made payable to Amos Whitely, president. Whitely was president of the Champion Machine Company, and in fact the note belonged to the company. He indorsed the note as president, and the company also indorsed it and sold it before maturity to a bank. Of course, the bank having taken the note by indorsement was a holder in due course; and it was held that it could recover notwithstanding the consideration for which the note was given had failed. If the note had been executed to the bank in the first place it would not have been a holder in due course, and failure of the consideration would have been a defense. The plaintiff does not need to rely upon that case. The same thing is expressly declared in the negotiable instruments law, of which section 6569 of the General Statutes of 1915 reads:

"Where an instrument is drawn or indorsed to a person as cashier or other fiscal officer of a bank or corporation, it is deemed *prima facie* to

be payable to the bank or corporation of which he is such officer, and may be negotiated by either the indorsement of the bank or corporation or the indorsement of the officer."

The draft in this case, however, was not made payable to Munsell as president. It was not the intention that it should pass to the bank until it had been indorsed by the payee. To constitute the bank a holder in due course required an indorsement, but when we come to the proof it appears that the payee obtained the draft without consideration and indorsed it to the bank without consideration. So in its last analysis the transaction is the same as though the draft had been made payable direct to the bank. It could not then claim to be a holder in due course.

2. For another sufficient reason the judgment must be sustained. The undisputed facts are, that when the Herington bank learned of the manner in which the draft had been obtained and that it had been protested, the bank made a new arrangement with Johnson, repossessing itself of all that it had surrendered in the way of notes and securities and taking a chattel mortgage to secure the old indebtedness and the expenses incurred. The mortgage recited the new arrangement as follows:

"It is hereby agreed that said Johnson having given one certain draft issued by the Lyons Exchange Bank. of Lyons, Kansas, Number 144,532 in favor of F. E. Munsell for $2,407.00 dated September 1, 1914, said draft having been protested for non-payment, that in the event of its collection by said First National Bank, the proceeds of same after paying all expenses shall be applied to the payment of the above described indebtedness."

This chattel mortgage covered all crops on Johnson's farm, all his cattle, horses, buggies, wagons, harness and machinery of every description, and was given to secure payment of $2505.87, representing the identical indebtedness of Johnson to the bank for which the draft had been accepted and expenses incurred since the draft went to protest.

By the express terms of the contract plaintiff undertakes to prosecute this action for the benefit of Johnson in order to protect him by collecting the draft on the theory that it is a holder in due course. Any sum recovered in the action would inure to the benefit of Johnson, who paid nothing for the draft and who obtained it through rank fraud. Since plaintiff was

Bank v. Bank.

fully restored to its former position and had in its possession all the evidences of indebtedness that it had exchanged for the draft, and the same or better security therefor than it possessed before the draft sued upon was issued, it can not claim to be a holder for value. The negotiable instruments law declares that except to the extent of the amount paid by him before he learned of the infirmity even a holder in due course is not protected.

"Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him." (Gen. Stat. 1915, § 6581.)

When the Mann case (34 Kan. 746, 10 Pac. 150) was before the court for the first time (30 Kan. 412, 1 Pac. 579), Mr. Justice Brewer stated the general rule "that a *bona fide* holder is protected to the amount he has paid, or lost, by virtue of the discount. . . . When he has parted with nothing there is nothing to protect." (pp. 421, 422.) It may be insisted that the rights of the bank became fixed before it learned of the infirmity; but it had not parted irrevocably with anything of value; it was able within a few hours, and before the rights of third persons had been affected, to restore itself to its former position.

Another rule which plaintiff invokes, that of two innocent persons, the one whose negligence placed it in the power of others to do wrong must suffer rather than the one who is not at fault, can hardly be said to apply since the plaintiff has not suffered an actual loss, but is seeking to better its situation at the loss of the defendant.

Instruction No. 1 requested by the plaintiff was properly refused. (*Bank v. Reid,* 86 Kan. 245, 120 Pac. 339.) It charged that plaintiff was, on the admitted facts, a holder in due course unless the jury should find "that F. E. Munsell knew or had reason to know that Frank O. Johnson obtained the draft sued on from the defendant fraudulently and without consideration." It entirely omitted any reference to "knowledge of such facts that his action in taking the instrument amounted to bad faith." (Gen. Stat. 1915, § 6583. See *Leavens v. Hoover,* 93 Kan. 661, 667, 145 Pac. 877.)

We find no error in the instructions given or in the refusal of those requested. After the defendant had offered evidence to establish the fraudulent manner in which the draft was procured the burden fell upon plaintiff to show that it was a holder in due course. (*Abmeyer v. Bank*, 76 Kan. 877, 92 Pac. 1109.) The general verdict in defendant's favor is a finding of every issue of fact against plaintiff.

The judgment is affirmed.

---

### OPINION DENYING A REHEARING.

#### Filed April 7, 1917.

In the opinion by way of argument was made the statement: "So in its last analysis the transaction is the same as though the draft had been made payable direct to the bank. *It could not then claim to be a holder in due course.*" This statement is seized upon to form the basis of a vigorous and ably argued petition for a rehearing. The portion not italicized is conceded by counsel to be correct. The statement that "It [the bank] could not then claim to be a holder in due course," it is claimed, is wholly at variance with the definition of what constitutes a holder in due course in the negotiable instruments law as construed by the decided cases. It is said by counsel:

"Certainly, if a payee of a bank draft has no notice of any fraud in the inception of the draft, he may hold the drawer, when such payee has given valuable consideration for the draft. He becomes a holder in due course as such is defined by the negotiable instruments act. . . . It would be contrary to present-day custom and ordinary business usage, to hold that the payee of a bank draft, having obtained such bank draft from the purchaser thereof for value, and in good faith, can not maintain an action against the drawer of such draft for the face value thereof, when payment on such draft is refused."

Various sections of the negotiable instruments act are quoted to sustain plaintiff's contention, including section 6522 of the General Statutes of 1915, which provides in part that " 'holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof." The foregoing is from the section of the act defining in general terms what certain words used in the body of the act mean; but obviously

Bank v. Bank.

this section does not in the slightest respect attempt to distinguish between various kinds of "holders," or to state what will constitute "a holder in due course." It is conceded that the plaintiff bank was a holder of the draft in controversy. Was it a *bona fide* holder? Was it a holder in due course? These were controlling questions on the trial of the case, but section 6522 does not answer or shed any light upon them. The negotiable instruments law is the result of years of study and effort by legal minds to secure a uniform code covering the field of controversy in respect to such instruments, and if the general definition of words used in the body of the act as expressed in section 6522 had been intended to include what constitutes a holder in due course, the preparation and adoption of article 5 of the act, specifically defining "a holder in due course" and his rights, must have been a work of supererogation.

The statement in the opinion that the situation was the same as though the plaintiff bank had been the payee named in the draft was not necessary to the decision, and no part of the statement formed a basis for the conclusion reached by the court. The statement may, therefore, be considered as eliminated from the opinion. The conclusion that if the bank had been the payee it could not claim to be a holder in due course is, however, a statement of law which finds strong support in decisions construing the uniform negotiable instruments law, although the question is one upon which the courts are not in harmony.

"There is some conflict in the decisions, under the negotiable instruments law, as to whether the payee may be a holder in due course. It has been held in Iowa, Missouri, Oregon and Washington that he is not a holder in due course under such statute. On the other hand, it has been held in Alabama, Massachusetts and New York that the payee may be a holder in due course. In England the decisions construing the bills of exchange act are more or less conflicting, it being held in some cases that the payee is not a holder in due course, while in a later decision the authority of earlier decisions has been at least limited on the theory of an estoppel. In Canada it has been held that the payee may be a holder in due course." (8 C. J. 469.)

The following text from the same compilation is directly in point, and sustains the statement in the opinion to which objection is made:

"On the other hand, one who is *in effect* the payee is not a holder in due course, although the bill or note is made payable to another and then transferred to the real payee." (8 C. J. 469. Italics ours.)

In this case the draft was made payable to another (Munsell) and by him indorsed to the bank. So that if we were to regard the bank as *in effect* the payee, this authority sustains our statement that the bank would not then be a holder in due course. The text quoted cites and is sustained by *Johnson v. Harrison*, 177 Ind. 240, 39 L. R. A., n. s., 1207.

Among the authorities cited in *Corpus Juris* upholding the other view are: *Armstrong v. American Exchange Bank*, 133 U. S. 433; *Liberty Trust Co. v. Tilton*, 217 Mass. 462, and Note to the same case, L. R. A. 1915 B, 144. Both cases are cited in plaintiff's petition for a rehearing. The first was decided in 1889, before the adoption of the uniform negotiable instruments law. We refer to the cases merely to show that this contention is one upon which there is a conflict of authority. Manifestly, an expression of our view of the interesting question would not at this time be profitable. The question is not involved in the present action for the reason that the draft sued upon required the indorsement of Munsell, the payee, before plaintiff could become a holder at all; and because he paid nothing for it and received nothing in consideration for his indorsement, the bank was not a holder in due course. (See authorities cited in the original opinion.)

It is complained the court had no right to assume as a fact that the $2200 note which Johnson left with the plaintiff as collateral was not genuine, and was signed with the names of fictitious persons. It is said this fact was not proved. The answer alleged that the signatures were fictitious, and that the note was not genuine. Munsell, president of the bank, was examined a year and four months after the draft was protested as to his knowledge respecting the parties to the note, and he testified that he did not know either of the alleged makers of the note, and had made no inquiry about the note except from Johnson. He supposed the note was genuine, but understood it was claimed by defendant to be a forgery. The defendant had raised the issue, and while it produced no witness to swear that the note was fictitious, neither did plaintiff produce evidence that the parties purporting to have signed it

ever existed. It would seem that the facts being naturally more within the scope of plaintiff's knowledge than defendant's, it ought not to have been difficult for plaintiff to assume the burden and show that the note was genuine. As there was no evidence connecting the plaintiff with fraud in the inception of the note, the assumption in the opinion that the note was fictitious did not prejudice plaintiff.

A rehearing is denied.