No. 25,525.

The Nashville State Bank, *Appellant*, v. John Weiser, *Appellee*.

SYLLABUS BY THE COURT.

1. Promissory Note—*Consideration Life Insurance—No Policy Delivered—Acquisition by Bank with Notice.* Where a bank acquired from an agent of a life insurance company a promissory note in which the bank was named as payee, and the bank knew at the time that one part of the consideration for the note was to be a life insurance policy to the maker but which had not then been issued, and that the other part of the consideration was a certificate for a $100 share of the insurance company's corporate stock which had not then been delivered to the maker of the note, and where the bank's acquisition of the note was made by its cashier and managing officer who was privy to and had a personal interest in the transaction in which the note was given, and where the bank upon its purchase of the note imposed a condition that the proceeds, less a nominal sum, should be kept on deposit in the bank to the credit of the insurance company, it is held that the bank's right to recover on the note and renewal thereof was subject to the same defenses as the maker might have pleaded and proved against the insurance company.

2. Same—*Refusal of Applicant for Insurance to Submit to Medical Examination—Breach of Implied Obligation—Nature of Plaintiff's Action.* The remedy, if any, for breach of an implied obligation to submit to a medical examination to determine defendant's qualifications as a life insurance risk, after his making an application therefor and giving in advance his promissory note to pay premium on life insurance in case he were accepted as a risk and a policy of insurance delivered to him, was not an action on the note but one for damages to the insurer.

3. Same—*Note Renewed—Whether a Payment, for the Jury.* Rule followed that the question whether a promissory note was given pursuant to an express agreement to compromise, settle and satisfy a preëxisting debt, or merely given to extend the time for payment, was for the jury's determination on the evidence submitted thereon.

4. Same. Other errors urged against the judgment examined and not sustained.

Appeal from Kingman district court; George L. Hay, judge. Opinion filed January 10, 1925. Affirmed.

*Charles C. Calkin,* of Kingman, for the appellant.
*John McKenna,* of Kingman, for the appellee.

The opinion of the court was delivered by

Dawson, J.: Plaintiff bank brought an action to recover on a note for $222 executed by defendant.

Defendant answered that the note was a renewal of one given in consideration of a policy of life insurance which defendant had applied for but never received. Another consideration was to have been a $100 certificate of stock in the insurance corporation and that had not been received. Defendant also alleged that the plaintiff's cashier, Hemphill, was working in connection with one Higgins, agent of the insurance company—

"That Hemphill was fully cognizant of what Higgins was doing in reference to writing life insurance and was advising and directing Higgins as to prospective applicants, and directing Higgins to call on defendant for the purpose of selling him life insurance, and knew at the time Higgins delivered the note dated August 10, 1921, for $214.50 to the bank that the same was taken by Higgins as a premium for a policy of life insurance to be thereafter delivered to defendant; that Hemphill knew at the time the bank took said note that no policy of life insurance had been delivered to defendant and that no stock in said company had been issued or delivered to defendant. . . .

"That the note sued on by plaintiff was only a renewal of the note for $214.50 given August 10, 1921, and was taken by the bank with full knowledge of all the foregoing facts, and was not taken as payment of the prior note but only as a renewal thereof, the bank simply retaining the first note."

In the original note as well as the renewal note the Nashville State Bank was named as payee.

Plaintiff replied with a general denial, a plea of waiver and estoppel, and of compromise and settlement, and that the bank had advanced money to agent Higgins on defendant's note merely as a loan to defendant.

The controlling facts were mainly these: Hemphill, the plaintiff's cashier, knew all the circumstances of the giving of the note. He was to receive from Higgins some commission on all policies after the first three had been written for persons suggested by Hemphill. Higgins delivered the note to the bank, which cashed it upon an understanding that the proceeds, less $10 or $15 paid in money to Higgins, should remain on deposit to the credit of the insurance company. After sixty days the insurance company drew out the money. Shortly after defendant signed the application for insurance and after he executed and delivered the original note to Higgins, payable to the bank, defendant was requested to call on a neighboring doctor to take the customary medical examination to the issuance of an insurance policy. He refused to be examined; consequently the policy of insurance never was and could not prudently be delivered to him. At defendant's request Hemphill wrote to the insurance company to get back the money, but the company

declined and repeatedly urged defendant to take the medical examination. To explain his refusal to be examined, defendant testified that he "had changed his mind." He admitted that since executing the original note and making the application he had applied for insurance in another company and had passed its medical examination and had obtained insurance. The renewal note was not given until the first note was three months past due, and when renewed it included the accrued and unpaid interest on the first.

After a jury was called and had heard the evidence, plaintiff moved that the jury be instructed to return a verdict in its favor. This was denied; and it was then agreed that the jury might be discharged and the cause submitted to the trial court for decision.

Judgment was entered for defendant, and plaintiff assigns error, arguing, first, that even if plaintiff's rights were not greater than those of the insurance company, it would be entitled to recover. Let us see about that. The statute provides:

"It shall be unlawful for any insurance company. or corporation, or any agent thereof, who shall have accepted premium notes in payment for policies of insurance, to sell or assign said note or notes to innocent purchasers prior to the delivery of said insurance policies to the insured." (R. S. 40-225.)

That statute is just as potent as any provision of the negotiable instruments act, and so far as relevant they must be construed together; but while a negotiable instrument is *prima facie* valid and imports a legal consideration, yet there is certainly nothing new in the rule that between maker and payee, or between the maker and a holder standing on no stronger footing than the original payee, the consideration may be shown and the want of consideration may be shown. So reads the statute of contracts and promises (R. S. 16-108.) To a like effect also is section 35 of the negotiable instruments act, R. S. 52-305. See, also, 8 C. J. 1024, 1064; 3 R. C. L. 942, *et seq.*

Could the insurance company itself have recovered on the note? Hardly. The consideration was $100 worth of the company's stock and a $5,000 insurance policy, neither of which the defendant had received. But it is urged that it was by his own fault that he had not received the consideration. Very true. There was an implied contractual duty on defendant, after signing the application for insurance and upon its approval by the insurance company, to submit to a medical examination so that if physically qualified and accepted for insurance the consideration for his promissory note could be de-

livered to him. But it is no crime in a free country for a man to breach or repudiate his contract. He may and usually will be liable in damages for so doing. But the damages will be measured by the extent of the loss sustained by the other party to the contract which he has repudiated.

Now in this case it could not be pretented that the insurance company's loss was the entire amount of the note given by defendant. Since the insurance company did not have to carry an insurance risk for defendant, and did not part with its $100 certificate of stock to him, it is not clear what damages other than nominal it did sustain through defendant's refusal to go ahead with his part of the conditional contract between him and the company. The case of *Ten Broek v. Jansma,* 161 Mich. 597, was much like the case here. An insurance agent, Ten Broek, obtained from Jansma an application for a life-insurance policy and Jansma gave his note for $160 payable to Ten Broek therefor. Jansma called on the doctor two or three times to take the requisite medical examination, but did not find him, and finally concluded that he did not care for the insurance, and so advised Ten Broek. When sued by Ten Broek on the note Jansma's defense was "want of consideration." Defendant prevailed. The supreme court affirmed the judgment, saying, in part:

"If any contract was made (which we do not intend to imply) it was between the company and the defendant. Counsel's claim seems to be that the application and note bound defendant to submit to an examination, and that inasmuch as he did not, but refused, he is liable on this note. If it were to be conceded that a binding contract was made, it was not a contract of insurance but a conditional contract to insure. If either party repudiated the alleged contract, the other might sue for breach and recover damages, but could not recover on a note given for a premium upon a policy never issued." (p. 600. See, also, *Citizens Nat'l Life Ins. Co. v. Murphy,* 154 Ky. 88.)

Was the bank in any better position than the insurance company? We would not attach undue significance to the mere fact that the bank was named as payee instead of the insurance company. The authorities are at variance on that point. See reported cases and annotations in 31 L. R. A., n. s., 613; L. R. A. 1915 B 144; 15 A. L. R. 437; 21 A. L. R. 1365; 26 A. L. R. 769; 32 A. L. R. 289. But here the bank knew—by the knowledge of its managing officer, Hemphill, its cashier (*Graves v. O'Brien,* 111 Kan. 320, 328, 207 Pac. 198)—that the note was given for an insurance policy which had not been issued and for corporate stock which had not then been delivered, and that under the interdict of the statute (R. S. 40-225)

the note was not then ready to be set afloat in the channels of trade endowed with the attributes of negotiable paper. Having such knowledge, the bank did not and could not acquire the note free from whatever defenses there were to it in the hands of the first taker. (*Nelson v. Southworth*, 93 Kan. 532, 539, 144 Pac. 835; *Bank v. Bank*, 100 Kan. 194, 164 Pac. 137.)

But it is also contended that the giving of the renewal note after the first was three months overdue, and after a controversy had arisen over defendant's liability on the first note, was in effect a compromise and settlement, which together with an extension of time for payment and a raise in the rate of interest, furnished a sufficient consideration for the renewal note. In the absence of an express agreement that a renewal note is executed in satisfaction of an older note, or to compromise, settle and satisfy a preëxisting debt, there is a presumption of law that the renewal note is not a payment of the older obligation but merely given to extend the time of payment (8 C. J. 569, *et seq.*; 3 R. C. L. 1217, *et seq.*). On the evidence presented to the trial court, its judgment on this point cannot be disturbed. (*Bank v. Cooper*, 99 Kan. 731, 162 Pac. 1169; *Bank v. George*, 105 Kan. 129, 181 Pac. 574; *Gregory v. Williams*, 106 Kan. 819, 822, 189 Pac. 932.)

It is also argued that the defendant was estopped to deny liability because "he evidently understood that the bank was not permitted to carry overdue paper, and it would be against public policy for him to conspire with the bank to make it appear that his note was good if such were not the fact." The argument is ingenious; but the circumstances surrounding the giving of the renewal note were so well established and, indeed, so obvious that it is not surprising that the trial court gave no weight to such fanciful theory of estoppel.

Yet another objection is urged on the admission of incompetent testimony. Since by mutual consent the jury was discharged and the cause submitted to the court, the presumption is that the trained mind of the trial judge was not led astray nor his judgment perverted by the fact that some incompetent testimony had been aired in his hearing. (*Crum et al. v. Oil Co.*, 117 Kan. 54, 230 Pac. 299.)

No error of any material consequence appears in the record, and the judgment is therefore affirmed.