No. 29,136.

ERNEST E. RIFE, *Appellee,* v. WILLIAM DOCKING, Receiver of the
Farmers State Bank of Esbon, *Appellant.*

(284 Pac. 391.)

Opinion
filed February 8, 1930.

*R. W. Turner,* of Mankato, for the appellant.

*F. W. Mahin,* of Smith Center, *A. Teeple* and *George E. Teeple,* both of
Mankato, for the appellee.

The opinion of the court was delivered by

JOCHEMS, J.: This was an action for damages and cancellation
of a note. It was based upon a contract between the plaintiff and
one of the defendants, Flora Stidham. At the time the contract was
made she was the vice president and a director of the Farmers State
Bank of Esbon. The bank failed and William Docking was placed
in charge as receiver on June 1, 1926. Action was brought by the
plaintiff against the receiver and all of the directors and officers of
said bank, including the defendant, Flora Stidham. At various
stages of the trial the action was dismissed as to all of the defend-
ants except the receiver. Plaintiff prevailed, and the defendant re-
ceiver appeals.

The action as originally brought appeared to be one for reforma-
tion of the written contract, and the case was tried to the court
without a jury. On March 20, 1925, the plaintiff and the defendant,
Flora Stidham, who was vice president and director of the bank,
entered into the following contract:

"This contract made and entered into this 20th day of March, 1925, by and
between Ernest E. Rife, as party of the first part, and Flora R. Stidham as
party of the second part.

"Witnesseth, that the party of the second part has this day transferred by warranty deed to the party of the first part the northwest quarter of section twenty-seven and the east one-half of the northeast quarter of section twenty-eight, all in township two, south, range six, west of the 6th P. M. in Jewell county, Kansas. The consideration of said transfer being sixty-two hundred twenty-nine and 65/100 dollars, and the privilege of repurchasing the land at any time within two years upon repayment to said first party of the sum as specified above or the redelivery of notes of the said first party to him in the amount of sixty-two hundred twenty-nine and 65/100 dollars, and in addition to pay him for any expense that he may have been to in connection with the said farm.

"The said second party agrees to repurchase the above-described land from the party of the first part at any time that he may elect, paying him therefor the sum of sixty-two hundred twenty-nine and 65/100 dollars.

"In witness whereof, the said parties have hereunto set their hands the day and date first above mentioned.

E. E. RIFE,
FLORA STIDHAM.

"Jan. 29, 1926.

"E. E. Rife has this day made note in the amount of $800, which should have been in the original amount of notes given when this contract was made for personal check of Flora Stidham paid to Mrs. W. S. Simmons for possession of farm, and said note is placed to her credit, paid Mrs. Simmons, Jan. 27, 1925."

The land described in the above contract was conveyed to Flora Stidham on January 27, 1925, by William S. Simmons and wife. At the time of this conveyance Flora Stidham was the vice president and a director of the bank. Simmons owed a number of notes to the bank, the total of which amounted to $6,229.65. The contract between the plaintiff and Mrs. Stidham called for the giving of notes of exactly the same amount, namely $6,229.65. Two notes were executed; one for $3,700 and the other for $2,529.65. These were made payable directly to the Farmers State Bank of Esbon. After the above contract was executed, to wit, on January 29, 1926, the addendum was placed thereon following the signatures. At the latter date the plaintiff gave another note of $800 to the bank at the direction of Mrs. Stidham. The evidence shows that Mrs. Stidham had paid this additional amount to Simmons in order to get possession of the land.

The notes given by the plaintiff were renewed each six months. At the time the action was brought the notes of $3,700 and $800 had been negotiated by the bank. Suits had been filed by the subsequent owners of these notes and judgments obtained against the plaintiff Rife. He had settled the note of $800 by the payment of

$720, but the judgment on the $3,700 note was still unsatisfied. On June 21, 1926, after the bank had closed its doors, the plaintiff tendered back a deed to the land to Mrs. Stidham, which she refused to accept. The plaintiff then brought this action and tendered the deed into court.

The plaintiff made numerous allegations in his petition of matters which he alleged had been orally agreed upon but which had been omitted·from the contract by mutual mistake, or as a result of mistake on the part of plaintiff, or fraudulent act of the defendant, Flora Stidham. He sought to have the contract reformed in accordance with his oral allegations. The evidence was insufficient to establish either mutual mistake or fraud. The court below did not reform the contract. The action therefore stands on the contract as written, in connection with other competent evidence admitted by the court.

The appellant contends that the court erred in admitting parol testimony to vary and add to the terms of the written contract. This testimony was heard by the court in order to determine whether or not the contract should be reformed and was competent on that issue. However, the court did not decree any reformation. Neither did the court vary or add to the written contract in rendering its judgment herein—hence, no error in the admission of this testimony. The appellant further complains of the action of the court in admitting that portion of the answer of the defendant, Flora Stidham, which reads as follows:

"Defendant admits that she had title to lands described in plaintiff's petition in her name on the 27th day of January, 1925, and that the same was held in trust by her for the Farmers State Bank of Esbon, Kansas."

Apparently this evidence was introduced for the purpose of proving that the defendant, Flora Stidham, was the agent of the bank and took title to the lands as trustee. This was error. It is elementary that agency cannot be proved by the mere declaration of the agent himself. However, it should be remembered that this case was tried by the court and not by a jury. In trials by the court the judge is presumed to be not influenced by incompetent testimony. In the case of *State Bank v. Weiser*, 117 Kan. 389, 232 Pac. 613, it was said:

"The presumption is that the trained mind of the trial judge was not led astray nor his judgment perverted by the fact that some incompetent testimony had been aired in his hearing." (p. 393.)

See, also, *Crum et al. v. Oil Co.*, 117 Kan. 54, 230 Pac. 299; *Reeves v. Sroade*, 124 Kan. 423, 260 Pac. 609.

It is to be noted, however, that the record disclosed some competent testimony bearing upon the question of the agency of Flora Stidham and upon the question as to whether or not the bank was the undisclosed principal of Flora Stidham in the contract above set out. True, this evidence is not very strong, but the record is sufficient to sustain the judgment on that issue.

The record shows that at the time the contract above set forth was entered into Flora Stidham was the vice president and a director of the bank; that the land described in the contract was conveyed by William S. Simmons and wife to Flora Stidham, and that at the time this conveyance was made Simmons was indebted to the Farmers State Bank of Esbon in the amount of $6,229.65. In the contract between the defendant, Stidham, and the plaintiff when it was originally drawn, notes were taken from the plaintiff for the exact amount of the Simmons indebtedness, viz., $6,229.65. The record further shows that all notes given by the plaintiff were made payable directly to the bank and not to Flora Stidham. These notes were delivered to Guy Seaton, cashier of the bank. The bank paid the taxes on this land part of the time. The bank negotiated two of the notes and received the benefits therefrom.

Perhaps the most significant bit of testimony in the record is the fact that when the contract was originally made the notes were taken payable to the bank in the exact amount, to the penny, which Simmons owed the bank at the time he deeded the land to Flora Stidham. If the contract in controversy represented only a personal transaction between Mrs. Stidham and the plaintiff, Rife, as contended by the appellant, is it reasonable that she would have exacted the 65 cents? Would she have insisted upon a consideration which was exactly the amount of the Simmons indebtedness? Real-estate deals are not usually figured to the penny. It is clear that she acted as the agent of the bank in securing from the plaintiff notes of the exact amount required to offset the amount owed by Simmons to the bank, and to properly balance the bank's books. There is sufficient evidence in the record to establish that the contract was made by Flora Stidham for her undisclosed principal, the Farmers State Bank of Esbon. It therefore was in fact the contract of the bank.

The question then is, Can this contract be enforced against the

receiver of the bank? In its inception it is clear that the contract as a bank transaction was *ultra vires.*

R. S. 9-151 provides that a bank may purchase, hold and convey real estate under the following conditions:

". . . Second, such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its business. . . . No real estate acquired in the cases contemplated in the second and third subsections above shall be held for a longer time than five years. If not sold before the expiration of said five years, it must be sold at private or public sale within thirty days thereafter, or charged off out of the earnings or surplus of said bank."

The contract in this case provided:

"The said second party agrees to repurchase the above described land from the party of the first part, at any time that he may elect, paying him therefor the sum of sixty-two hundred twenty-nine and 65/100 dollars."

Such a provision, so far as a contract on the part of the bank is concerned (and we have now found that it is a bank contract), is clearly invalid. The statute contemplates that when a bank takes over real estate in payment of debts due it it shall proceed as soon as possible to convert the same into cash. In order to convert real estate into cash the bank can, of course, make a proper contract relative to the sale of real estate. It cannot, however, make a contract for the sale of real estate which could not be fully terminated and closed within five years, nor can it make such an indefinite repurchase agreement as set forth in this contract. The statute authorizes a bank to sell its real estate, but a repurchase clause such as the one set forth in this contract would render nugatory the purpose of the statute, namely, that the real estate held by the bank be converted into cash. Such a clause would likewise create a liability on the part of the bank which so far as its books are concerned would be an undisclosed liability. The contract is clearly invalid because it is beyond the scope of the bank's authority.

Can the receiver, however, avail himself of that defense?

In *Ballard v. Bank,* 91 Kan. 91, 136 Pac. 935, it was said:

"The contract was not immoral or forbidden and even if when made it was invalid for want of capacity on the part of the officer or of the bank, it was so far carried out that a defense on that ground cannot successfully be interposed. (See cases cited in *Harris v. Gas Co.,* 76 Kan. 750, 92 Pac. 1123.)" (p. 97.)

In *Saylors v. Bank,* 99 Kan. 515, 163 Pac. 454, it was said:

"When an agreement has been effected whereby certain profits and ad-

vantages have been procured by a banking corporation, a defense that the contract was *ultra vires* will not be countenanced to permit the bank to avoid its undertaking pursuant to such contract." (Syl. ¶ 2.)

In the opinion the court held:

"Viewing this question from another angle, it should be noted that, pursuant to the arrangement between Kelly and the bank by which Kelly's checks were to be honored, the title to plaintiff's cattle passed to the president of the bank, and they were shipped in the latter's name to Kansas City and the proceeds thereof went to swell the bank's assets—to meet Kelly's checks, of course —but nevertheless they became assets of the bank. In such a situation the bank could not escape its obligation to pay Kelly's check for plaintiff's cattle, even if its agreement with Kelly was *ultra vires.*" (p. 519.)

In the present case it is clear that the bank has received the benefits from the $3,700 note and the $800 note which were made payable to and negotiated by the bank. The other note is still in the hands of the receiver. Inasmuch as the evidence establishes that the contract was a bank transaction made by its agent, Flora Stidham, for the purpose of assisting the bank to convert its real estate into cash, and the bank as a result of said contract has received substantial benefits, it cannot now be permitted to raise the defense of *ultra vires.* To permit it to do so would be grossly inequitable. It would be contrary to the rules of fair dealing between man and man.

We find no reversible error in the proceedings of the trial court. Its decision is correct.

The judgment is affirmed.