No. 35,618

THE FIDELITY SAVINGS STATE BANK, *Appellant,* v. HARRY E. GRIMES, *Appellee.*

(131 P. 2d 894)

Opinion filed December 12, 1942.

*Eldon R. Sloan,* of Topeka, argued the cause, and *E. R. Sloan, W. Glenn Hamilton, Floyd A. Sloan,* all of Topeka, and *Frank G. Theis,* of Arkansas City, were on the briefs for the appellant.

*W. L. Cunningham,* of Arkansas City, argued the cause, and *D. Arthur Walker* and *Wm. E. Cunningham,* both of Arkansas City, were on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action on a promissory note by the Fidelity Savings State Bank of Topeka against Harry E. Grimes, the maker thereof. The defendant prevailed, and plaintiff appeals.

The note bore the signature of the defendant, Harry E. Grimes,

who was engaged in the motor transport business. The payee was the Industrial Mutual Liability Insurance Company. When the note reached the appellant bank it contained the endorsements of the payee and the American Motors Investment Corporation. The defendant, among other defenses, denied delivery of the note. For the present we shall direct our attention to the right of the payee to accept the note, assuming it was delivered by the maker, concerning which we express no views. We shall next consider the right of the appellant bank to recover from the appellee, Grimes.

Assuming delivery, the note was obtained by the insurance company as a premium note on its policy of liability insurance, and the amount of the note in the sum of $613.70 represented the entire premium on the policy. The premium on the policy was the sole consideration for the note. The note provided for the payment of the premium in monthly installments. Appellee paid such monthly installments by check until the insurance company became insolvent and went into receivership. The checks were cashed by the insurance company. The appellant bank obtained the note from the American Motors Investment Corporation, to be used as partial collateral for a loan appellant had made to it. The evidence clearly disclosed the appellant bank knew, at the time it accepted the Grimes note, together with numerous other similar notes, which were also put up as collateral for the same loan, that the note was a premium note and that the payee was the Industrial Mutual Liability Insurance Company, of Wichita, Kan. Soon after appellant received these various notes it learned that both endorsees had gone into receivership. It then sued Grimes for the face value of the note.

The first question is whether a mutual insurance company, other than life, has authority in this state to accept a note, or notes, for a premium or premium deposit. The charter of the Industrial Mutual Liability Insurance Company, among other things, states:

"That this organization is organized not for profit and that the purposes for which it is formed are:

"To write insurance on the *mutual plan as provided by* article XII of the insurance code of the state of Kansas, same being section 40-1201 to section 40-1213, inclusive, of 1923, together with all amendments thereto. And the character and kind of insurance contracts which said company proposes to write, are as follows:" (Emphasis supplied.)

(Here followed a list of the kinds of insurance which companies of this character could issue.)

This insurance company was incorporated August 26, 1937. The

pertinent statute was amended by chapter 211 of the Laws of 1939. The material portion of the amendment provides:

"Sec. 4. Section 40-1207 of the General Statutes of 1935 is hereby amended to read as follows: Sec. 40-1207. Such policies shall provide for a premium and premium deposit *payable in cash,* and, except as herein provided, for a contingent premium at least equal to the premium or premium deposit. Such mutual company may issue a policy without a contingent premium while it has a surplus equal to the capital and surplus required of a domestic stock insurance company transacting the same kind of insurance, and in no event shall the holder of any such policy be liable for a greater amount than the premium or premium deposit expressed in the policy. . . ." (G. S. 1941 Supp. 40-1207.)

The instant note bears the date of February 3, 1940. We observe G. S. 1935, 40-1207, before amended in 1939, made an exception with regard to the requirement that premiums and premium deposits had to be paid in cash. That exception pertained only to policies of insurance on growing crops. As to such insurance the 1935 law provided the policy might provide for the payment of the premium or premium deposit by *secured notes.* The fact an exception was made as to payment by notes and that the notes in case of the designated exception were required to be secured is an additional indication the lawmakers clearly intended only cash could be accepted for premiums on other policies. A further indication that the lawmakers intended to prohibit mutual insurance companies, other than life, from operating on a credit basis with respect to premiums is the fact that in the 1939 amendment they also struck down the previously mentioned exception.

In determining what powers a corporation possesses the question is not whether it has been denied a certain right, but rather whether it has been granted the right in question. It is of no significance that a statute does not forbid the exercise of a power assumed by a corporation. Unless somewhere in the law there is an express or clearly implied grant of power to the corporation the power does not exist. (*A. O. U. W. v. Hobbs,* 136 Kan. 708, 18 P. 2d 561.) Certainly this statute does not even by implication grant the power or right in question, but on the contrary clearly denies the insurance company the right to accept a note in payment of a premium. The statute expressly requires that the policy itself (the contract of insurance) shall provide for the payment of the premium and premium deposit *in cash.* A payment by note is not a payment "in cash." In fact, a note is not payment at all, but only a promise to

pay. It has been definitely held, in similar cases, that where payment of the premium was required to be made in cash and payment was attempted by a note, which was not paid when due, the insurance company was not liable on the policy. (*Newsom v. New York Life Ins. Co.*, 60 F. 2d 241; *Travelers Ins. Co. v. Wolfe*, 78 F. 2d 78.) In the instant case we need not decide whether the insurance company could profit by its own illegal transaction and then set up the illegal transaction as a defense. The maker of the instant note had not received benefits under the policy for which he had not paid. He paid the monthly installment premiums by check when due up to the time the insurance company became insolvent and the company cashed the checks. In the instant action appellant attempts to collect from appellee the face value of the note, notwithstanding the insurance company was by statute expressly denied the right to accept the note in payment of the premium or as a premium deposit, and notwithstanding the fact appellant knew the note was obtained for that purpose.

Appellant relies upon *Chesney v. Pioneer Sugar Co.*, 73 Utah 293, 273 P. 760, and *Nastav v. Missouri Mut. Ass'n*, (Mo. App.) 47 S. W. 2d 166. It is conceded there is lack of uniformity in the decisions of various courts with respect to the effect of certain *ultra vires* acts, but certainly the Missouri decision relied upon by appellant does not support his contention. The Missouri statute did not directly forbid the execution of the contract in question. We think under the facts in this case the insurance company could not have recovered on the note.

Was the appellant bank in any better position to recover from the maker? In *State Bank v. Weiser*, 117 Kan. 389, 232 Pac. 613, in commenting on the effect of R. S. 40-225, which prohibited any insurance company or corporation, or any agent thereof, who had accepted premium notes in payment for policies of insurance, from selling or assigning such note or notes to innocent purchasers prior to the delivery of the insurance policies to the insured, we said:

"That statute is just as potent as any provision of the negotiable instruments act, and so far as relevant they must be construed together; but while a negotiable instrument is *prima facie* valid and imports a legal consideration, yet there is certainly nothing new in the rule that between maker and payee, or between the maker and a holder standing on no stronger footing than the original payee, the consideration may be shown and the want of consideration may be shown. So reads the statute of contracts and promises (R. S. 16-108). To a like effect also is section 35 of the negotiable instruments act, R. S. 52-305. See, also, 8 C. J. 1024, 1064; 3 R. C. L. 942 *et seq.*" (p. 391.)

With respect to the knowledge of the plaintiff bank in the Weiser case we stated:

"But here the bank knew—by the knowledge of its managing officer, Hemphill, its cashier (*Graves v. O'Brien*, 111 Kan. 320, 328, 207 Pac. 198) — that the note was given for an insurance policy which had not been issued and for corporate stock which had not then been delivered, and that under the interdict of the statute (R. S. 40-225) the note was not then ready to be set afloat in the channels of trade endowed with the attributes of negotiable paper. Having such knowledge, the bank did not and could not acquire the note free from whatever defenses there were to it in the hands of the first taker. (*Nelson v. Southworth*, 93 Kan. 532, 539, 144 Pac. 835; *Bank v. Bank*, 100 Kan. 194, 164 Pac. 137.)" (p. 392.)

It is unnecessary to review the testimony to show that the appellant bank in the instant case had knowledge, at the time it accepted this note and numerous other similar ones for collateral, of the fact that these notes constituted premium notes and were taken as such by the insurance company. The testimony of the president of the appellant bank, who handled the transaction, is too clear on that point to admit of argument. He did not have merely constructive notice but, according to his own frank admission, actual knowledge of the character of the note in question. He is presumed to know the law. He therefore took the note knowing it was obtained by the insurance company for a consideration which was prohibited by law. The appellant bank was not a holder in due course. (G. S. 1935, 52-502.) In view of the testimony of the president of the bank we need not dwell upon the effect of the testimony of the assistant cashier, who was present and knew the circumstances of the transaction, and who in effect testified he did not know what the consideration for the notes was, and then stated, "I didn't want to know."

In view of what has been said it is unnecessary to discuss various cases cited by appellant which pertain to constructive notice of defects in the title to negotiable paper. Nor is it necessary to discuss certain patent right cases, cited by appellant, in which the notes reached the hands of a holder in due course.

It is also contended the trial court committed reversible error in refusing to submit to the jury the following questions:

"1. Was the plaintiff a holder in due course?

"2. If you answer the above question in the negative, then state what knowledge the plaintiff had of any defect in the title to the note sued on."

The question whether appellant was a holder in due course was settled against it by the plain admissions of its president. There

was no evidence contrary to his admissions. No factual issue on that point remained for the jury to resolve. No instructions were given by the court on that subject. There was no objection to the instructions on the ground that the subject of holder in due course was not covered, and no instructions on that point were requested by appellant. Under the circumstances appellant was not entitled to have the special questions submitted to the jury.

The only objection appellant made to the instructions, insofar as any issue we have discussed is concerned, was an objection which pertained to the right or power of the insurance company to accept the note in payment of the premium or as a premium deposit. If there was any error in that instruction it was favorable to appellant, as it was purely a question of law for the court to determine whether, under the statute, the insurance company had the right to accept a note in payment of the premium.

Having concluded the insurance company was prohibited by statute from accepting the note in payment of the premium or as a premium deposit and that the appellant endorsee, by virtue of actual knowledge of the defect in the title of the payee, could not recover against the maker, it is unnessary to treat the various other defenses to the note urged by appellee.

The judgment is affirmed.