## COMMONWEALTH *vs.* STEPHEN R. DOW.

Suffolk. March 26, 1914. — May 19, 1914.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & CROSBY, JJ.

*Statute,* Construction. *Corporation,* Officers and agents: criminal liability for conversion. *Evidence,* Presumptions and burden of proof, Of intent, Relevancy and materiality. *Practice, Criminal,* Exceptions, Conduct of trial: judge's charge, Arrest of judgment, Verdict. *Words,* "Appropriate."

Proceedings in the Senate preliminary to the passage of St. 1878, c. 274, now R. L. c. 208, § 62, here were referred to as confirming the interpretation of the statute adopted by this court, and cases were cited as to the propriety of referring to such legislative history to throw light upon a doubtful statute.

At the trial of an indictment under R. L. c. 208, § 62, charging that the defendant, who was the president and a director of certain mining corporations doing business in this Commonwealth, "did fraudulently appropriate and convert to his own use" certain sums of money of the corporations, it is not necessary to prove that, previous to the alleged misappropriation, the defendant had possession of the money. It is enough to prove that he appropriated or converted it by fraudulent means.

Section 62 of R. L. c. 208 is intended to prohibit breaches of trust by which faithless corporate officers or agents appropriate the corporation's property to their own use, and is not confined in its scope to a prohibition of the crime of embezzlement.

At the trial of an indictment for a violation of R. L. c. 208, § 62, in that the defendant "did fraudulently appropriate and convert to his own use" certain specific sums of money belonging to certain corporations of which he was president and a director, there was evidence tending to show the following facts: The defendant was the dominating person in all the corporations, which were foreign mining corporations not producing ore and which were doing business in this Commonwealth, and his directions to the treasurer always were followed at once. The defendant organized some of the corporations, subscribed for almost all of their capital stock, paid therefor with his personal notes and made returns to the State officers of the State of the corporations' domicil that the stock was paid for in cash. At various times the treasurer, by order of the defendant, without the knowledge of the stockholders or directors of the corporations concerned

and, as the defendant knew, contrary to the by-laws of such corporations and the laws of the State of their domicil, paid to the defendant funds of the various corporations in return for the defendant's unsecured personal notes. The sums so paid amounted in all to over $1,000,000. The corporations had procured these amounts either by their notes being discounted at banks or trust companies, or from assessments upon the holders of the capital stock represented in the call to be for development purposes. The defendant then signed several statements to the effect that the amounts which in fact were represented by his unsecured notes were cash in the treasuries of the corporations. While $250,000 of the amounts thus taken by the defendant from the corporations were unpaid, the defendant went into bankruptcy. *Held*, that a verdict of guilty was warranted.

At such trial, where the defendant's acts were equivocal in their nature and might be criminal or honest according to the intent with which they were done, it was *held* that the Commonwealth properly was permitted to show that, by means of a like plot and design and in furtherance and as part of a common scheme, the defendant fraudulently procured funds from another mining corporation, which was not mentioned in the indictment.

And, it appearing that at such trial the treasurer of the corporations, called as a witness by the Commonwealth, was asked in cross-examination whether he thought the defendant perfectly responsible financially, and that the question was excluded subject to an exception by the defendant, and it also appearing that the same inquiry had been answered earlier by the witness, it was *held* that the exception must be overruled because the defendant had suffered no harm.

Evidence admitted at such trial tending to show that the defendant applied for a listing of the stocks of the corporations on certain stock exchanges and, in connection with such applications, submitted false statements in writing as to the condition of the corporations' treasuries, was *held* to have been admitted properly as tending to show a part of a general fraudulent plan of the defendant and as bearing on the question of his intent.

As further bearing on the questions of the defendant's intent and the motive for his acts, it was *held* that the trial judge rightly admitted in evidence annual reports of the corporations to the officers of the State of their domicil, containing false statements as to their condition and signed by the defendant; annual reports to the stockholders, prepared under the defendant's directions, containing statements tending to deceive the readers into thinking that there were large sums of cash in the corporations' treasuries instead of personal unsecured notes of the defendant; notices calling for assessments on the stock for development of the mines, the money thus procured being paid to the defendant on his unsecured personal notes; the procuring from banks, on discounted notes of the corporations, of money afterwards paid to the defendant on his unsecured personal notes; a conversation of the defendant with a reporter of a financial newspaper wherein the defendant falsely stated, in reply to an inquiry as to whether the corporations' stocks were under pressure, that there was ample cash in their treasuries; an advertisement in a newspaper, disguised as news, containing like false statements; evidence of the defendant's financial embarrassment, and evidence of great extravagance in his living expenses.

A judge of the Superior Court has no power to allow exceptions, properly saved at the trial of a criminal case but not included in a bill of exceptions which was filed and notice of which was given in accordance with the requirements of R. L.

c. 219, § 35, although such exceptions are included in an amended bill presented after the time allowed by the statute.

At the trial of an indictment charging in several counts violations of R. L. c. 208, § 62, in that the defendant, while the president and a director of certain corporations, "did fraudulently appropriate and convert to his own use" money of the corporations, the presiding judge read copious extracts from the opinion of this court in *Commonwealth* v. *Tuckerman,* 10 Gray, 173, concluding with the statement, "Those statements, so far as they apply to the evidence in this case, I give you as the law in this case," and, on exceptions by the defendant, this court, after an examination of the judge's charge, *held,* that the charge was not objectionable on the ground that so many of the facts were read from the case quoted as to prejudice the jury.

Where an indictment contains several counts, which, read in connection with specifications filed by the Commonwealth, charge that the defendant, in doing certain acts, committed the crime described in R. L. c. 208, § 62, relating to misappropriation by an officer, agent, clerk or servant of a corporation doing business in this Commonwealth of property of the corporation, and also other counts charging that in doing the same acts the defendant committed the crime described in § 26 of the same chapter, which includes in its description the crimes formerly described as larceny, embezzlement and obtaining property by false pretenses, and verdicts of guilty are returned as to the counts charging the crime described in § 62, and of not guilty as to those counts charging the crime described in § 26, a motion in arrest of judgment on the ground that the verdicts are inconsistent should not be sustained, because the crime described in § 62 is a different offense from that charged in § 26.

Rugg, C. J. This is an indictment in ninety-two counts.* The defendant was found guilty on twenty-four counts, each of which charged a violation of R. L. c. 208, § 62, with reference to different mining companies of which he was president and director. The material part of the statute is as follows: "An officer . . . of a corporation which is . . . doing business in this Commonwealth . . . who fraudulently . . . appropriates the money or disposes of the property of such corporation, or fraudulently converts it, shall be punished by imprisonment." These counts charged that the defendant, being president of one or the other of these corporations, "did fraudulently appropriate and convert to his own use" a specified sum of its money. He was found not guilty upon the other counts, some of which charged him in the short statutory form with larceny in respect of the same transactions from the same corporations.

The statute for infraction of which the defendant was found guilty never has been before this court for construction. It was

---

* The case was tried before *Brown,* J.

enacted first by St. 1878, c. 274, substantially in the same words as now, so far as concerns this case. Its phraseology is general and comprehensive. It does not savor of the technicalities of the ancient criminal law, but employs plain words in common use. It provides punishment for an officer, agent, clerk or servant of a corporation who fraudulently appropriates or converts its money or property. "The term 'appropriate' is of the largest import." *Boston & Lowell Railroad* v. *Salem & Lowell Railroad,* 2 Gray, 1, 35. *People* v. *Lammerts,* 164 N. Y. 137, 143. It is defined by lexicographers, "to take to one's self in exclusion of others." As used in this statute it embraces every mode by which an officer or agent fraudulently or unlawfully obtains the property of the corporation.

There is nothing in the words of the statute, its history or the evil against which it appears to be directed, to indicate that there should be read into it any of the constricting limitations argued for by the defendant. He contends in effect that it was not intended to include larceny or obtaining of money by false pretenses, and is confined in its scope to embezzlement, and that it implies that the money or property appropriated or converted must be in the possession of the officer or agent. These contentions cannot be supported. To adopt them would be subversive of the manifest purpose of the act. It would be contrary to the trend of modern jurisprudence, which is away from the niceties of ancient criminal pleading and practice toward a simplicity and plainness which affords to defendants every reasonable protection, while depriving them of the opportunity to profit at the expense of the general public from mistakes of unwary prosecuting officers. The scandal which formerly existed in the administration of justice arising from the fine distinctions between larceny, embezzlement and obtaining property by false pretenses has been described in *Commonwealth* v. *King,* 202 Mass. 379, 388. It cannot be supposed that the statute in question, although enacted somewhat earlier than the simplification of criminal pleading act, was intended to perpetuate or increase confusion in this respect. It was aimed by its terms at fraudulent breaches of trust, by which a faithless corporate officer or agent took its estate. The natural meaning of its words leads to this result. This interpretation is confirmed by reference to the proceedings of the Senate when the original statute was

on its passage. It originated in an order for legislation to protect corporations against fraudulent issue or overissue of paper by officers or agents. But a proposed bill to this end was recommitted to the committee with instructions "to report a bill covering embezzlement and breaches of trust." Senate Journal, 1878, 364, 409, 419, 422, 436. It is apparent that the Legislature intended to accomplish something more than a punishment for embezzlement. The propriety of referring to such legislative history to illuminate a doubtful statute is established by *Old South Association* v. *Boston,* 212 Mass. 299 and cases cited, and *Lapina* v. *Williams,* 232 U. S. 78, 90. See also *Rea* v. *Aldermen of Everett, ante,* 427. Moreover, that such was the effect of the act follows from the fact that in 1878 there was ample law for the punishment of embezzlement from a corporation in Gen. Sts. c. 161, § 38. It cannot be presumed that a new statute duplicating an existing one was intended.

It is not necessary, nor is it attempted to give a complete exposition of this section of the statute. It is enough to say that it does not require previous possession of the money appropriated or converted by the officer. It is satisfied if there is any appropriation or conversion through any fraudulent means.

The defendant urges that the evidence did not warrant a finding that he was guilty of any crime. Broadly stated, the defendant's position at the trial was and now is that he became possessed of the property of these several corporations by borrowing it from them upon his note, and that the sum of his doings constituted only these simple and innocent transactions. His conduct was susceptible of this construction. But this was not its necessary complexion.

The contention of the Commonwealth was that the defendant contrived the scheme of forming mining companies for the purpose of getting from the investing public large sums of money where he could control and use them in his stock speculations.

The evidence was extremely voluminous. No attempt will be made to state it at length. It is enough to say upon the direct testimony and its fair inferences in the aspect most adverse to the defendant, that there was ground for finding that he was the president, a director and the dominating person in all of these corporations, which were copper mining companies not yet pro-

ducing ore. In two of those which he organized, he personally subscribed for substantially all the stock, except only such as it was necessary for others to hold. Although it was stated in various instruments subscribed by the defendant and filed with public officers of Michigan, the State of the domicil of several of the corporations, that their capital stock upon organization was paid in cash, yet in fact it was not so paid, but was represented by the note of the defendant. The treasurer of all these corporations was a person who might have been found to have failed in the exercise of the individual and personal responsibilities inherent in his office, and to have been wholly under the domination of the defendant, whose directions as to the transfer to him of the money of the several corporations in exchange for the defendant's unsecured note were followed in every instance at once, without inquiry or question. One sentence from his testimony referring to the defendant expressed the relation between the two. "He had the whole command of the business and I was to do what he told me." He testified also, "I was treasurer, under his orders." Large sums of money were taken from the treasuries of the several corporations and handed to the defendant. The method was this: The defendant told the treasurer to make a check to his order for a specified amount, and at the same time to make a note for the same amount payable to the corporation. The check was signed by the corporation by its treasurer and handed to the defendant, while his wholly unsecured promissory note was taken by the treasurer. According to the testimony of the defendant the total "borrowings" amounted to something more than $1,000,000, of which about $250,000 was outstanding and unpaid when he went into bankruptcy. The total of the amounts charged in the counts upon which the defendant was found guilty were about $261,000. None of these exchanges of checks for notes were known to the directors of any of the corporations, nor in any way authorized by them or by the stockholders. Several statements were signed by the defendant to the effect that the amounts represented by his unsecured notes were cash in the treasuries of the corporations. The defendant falsely represented to the treasurer that a vote had been passed by some of the companies, constituting them or them with others a committee, to lend the funds of these corporations. In numerous instances the money which the defendant

took was secured for the company's treasury contemporaneously by a company note discounted at some bank or trust company. In others, it was procured from assessments upon the stock represented in the call to be for development purposes. The treasurer was forbidden by the by-laws to disburse the moneys of the corporation except in accordance with the directions of the board of directors.

These, which might have been found to have been the facts, were sufficient to warrant the verdict of guilty.

The numerous false statements under oath that stock had been paid in cash, whereas the only thing in the treasury was the defendant's unsecured note, were significant of an evil purpose. An unsecured note is not cash. *Pierce* v. *Bryant,* 5 Allen, 91. *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138.

The defendant was himself president and director and, in fact, the financial manager of each corporation. It was his duty in that capacity jealously to guard its interests and be vigilant to see that its resources were conserved. If the treasurer was dealing with the funds contrary to the by-laws or without the authority of the directors, it was his duty to restrain him. To be the means of procuring money for himself under the circumstances might have been found significant of fraud. Other portions of the evidence might have been found to point to a fraudulent purpose and to an intent to appropriate to his own use money which belonged to the corporations.

Every element of the statutory offense charged in the counts upon which he was held to be guilty might have been found upon the evidence. The defendant was president and director of all the corporations and hence an officer. *Commonwealth* v. *Wyman,* 8 Met. 247, 252. The corporations unquestionably were doing business in this Commonwealth. The defendant appropriated to his own use moneys of the corporations fraudulently, because he took that which he might have been found to know was unauthorized by the stockholders, the directors, the by-laws or the domiciliary law of the corporations. *Commonwealth* v. *Tuckerman,* 10 Gray, 173. *Parker* v. *Nickerson,* 112 Mass. 195. *Old Dominion Copper Mining & Smelting Co.* v. *Bigelow,* 203 Mass. 159, 191. *Malden & Melrose Gas Light Co.* v. *Chandler,* 209 Mass.

354. *German Corporation* v. *Negaunee German Aid Society*, 172 Mich. 650, 659. *People* v. *Butts*, 128 Mich. 208, 214, 215.

It follows that the case rightly was submitted to the jury, and that each of the defendant's requests for instructions, so far as not given and now material, were denied properly.

The Commonwealth was permitted against the exception of the defendant to introduce evidence as to his transactions with the Corbin Copper Company, which was organized by him and whose entire capital stock he took and subscribed for by his demand note. His transactions with this company in respect of large payments to him by its checks in payment for his unsecured notes resembled in its salient features those with other companies as to which he was indicted. But there were no counts in the indictment respecting his relations with the Corbin Company. This evidence was admissible as tending to show the defendant's intent in the transactions as to which he was indicted. The affairs of the Corbin Company, though distinct from those of the other companies as matter of records and accounts, were so closely connected in all other respects as to make them competent evidence. Where an act is equivocal in its nature and may be criminal or honest according to the intent with which it is done, then other acts of the defendant and his conduct on other occasions may be shown in order to disclose the mastering purpose of the alleged criminal act. Where the intent of one charged with crime is to be proved, a wider range of evidence is allowed than in support of other issues. *Commonwealth* v. *Jeffries*, 7 Allen, 548. *Commonwealth* v. *Scott*, 123 Mass. 222. *Commonwealth* v. *Blood*, 141 Mass. 571. *Commonwealth* v. *Robinson*, 146 Mass. 571, 578. *Commonwealth* v. *Stuart*, 207 Mass. 563, 568. Even though the evidence may have tended to prove another like crime, it was so connected with those charged in the indictment as to show unity of plot and design and that all were influenced by a single and contemporaneous motive and were parts of a common scheme. *Commonwealth* v. *Choate*, 105 Mass. 451, 458. *Jordan* v. *Osgood*, 109 Mass. 457.

The defendant suffered no harm from the exclusion of the question in cross-examination of the treasurer, whether he thought the defendant perfectly responsible financially. This inquiry had been answered in substance earlier in the examination and the

defendant had the benefit of the testimony. *Nelson* v. *Boston &*
*Maine Railroad,* 155 Mass. 356, 358.

The applications to the Boston Stock and Curb Exchanges for
listing of the stocks of several of these companies, and the financial
statements in connection therewith, were competent. They were
signed by the defendant and contained statements as to the con-
dition of the treasury of each, which might have been found to
be false. Being deceptive in respect of the indebtedness of the de-
fendant to the corporation, they supported the view that the list-
ing of the stock and the consequent improved opportunity for
sale of the stock to the public were parts of a general plan of the
defendant.

The annual reports of the several companies to the State of
Michigan, signed by the defendant, were admissible. They might
have been found to have been false as to the financial condition
of the companies in material respects, and, if so, they bore upon
his intent.

The annual reports to the stockholders were competent evi-
dence. These were made up by the treasurer and submitted to the
defendant for his approval before being presented. The treas-
urer testified that he made out cash and notes receivable in different
items, but at the direction of the defendant grouped them to-
gether. This might have been regarded as significant of a design
to deceive in instances where there was comparatively little cash
and large amounts of the defendant's notes.

The notices calling for assessments on the stock were received
in evidence rightly. They were signed by the defendant and stated
in substance that the money derived from the assessment was to be
used for the development of the mines. In truth, large sums from
such assessments were taken by the defendant. Evidence of the
borrowings of two companies from the American Trust Company
likewise was admissible. These had a tendency to disclose the
intent of the defendant in subsequently procuring some of these
moneys for himself. *Commonwealth* v. *Walker,* 108 Mass. 309,
312. *Commonwealth* v. *Althause,* 207 Mass. 32.

A conversation between the defendant and a representative of
the Boston News Bureau was admitted in evidence, in substance
to the effect that the latter said the Dow stocks were under pres-
sure, and he asked the defendant whether there was anything

wrong with them financially or physically, to which the defendant replied, giving a statement prepared for him showing large sums of cash on hand when in truth there was little. This was a circumstance which might have weight in showing a consciousness of wrongdoing on the part of the defendant in not disclosing the truth. .

The advertisement in the Boston American, disguised as news, which might have been found to have been prepared under the direction of the defendant, and which was used by him for distribution, contained false statements as to the financial resources of the company and might have been found to be "well adapted to attract the attention and gain the confidence of credulous people." It was admitted rightly as bearing upon the general purpose and intent of the defendant. *Commonwealth* v. *King*, 202 Mass. 379, 393.

Evidence tending to show the defendant's financial embarrassment was competent. *Commonwealth* v. *Jeffries*, 7 Allen, 548, 565. *Commonwealth* v. *Drew*, 153 Mass. 588, 595, 596.

Testimony of great extravagance in living by the defendant was admissible. Its weight might be great or small according to circumstances. But it cannot be said not to have been found a confirmation of the need of the defendant for money and of his motive in appropriating it. *Commonwealth* v. *Mulrey*, 170 Mass. 103, 111. *Commonwealth* v. *King*, 202 Mass. 379, 392.

The trial judge made a memorandum in his allowance of the defendant's substitute bill of exceptions in these words: "Certain exceptions stated herein . . . were taken at the trial, but were not reduced to writing, filed with the clerk, and notice thereof given to the Commonwealth within the requirements of R. L. c. 219, § 35, and were not included in the original bill of exceptions filed by the defendant. . . . These exceptions I allow so far as I have the power to do so." This was a proper form in which to raise the question whether the exceptions are before this court rightly. *Commonwealth* v. *Greenlaw*, 119 Mass. 208.

The exceptions thus included in the amended bill, but left out of the original bill, cannot be considered. While liberality is to be exercised in permitting an excepting party to correct errors or supply omissions where a party has attempted to state all upon which he expects to rely, yet "if he files a bill containing certain

exceptions and omits altogether to include certain others that were duly taken, these cannot be added to a bill after the expiration of the time within which they might be filed." *Dorr* v. *Schenck,* 187 Mass. 542, 543, and cases there cited. *Currier* v. *Williams,* 189 Mass. 214, 219. *Squier* v. *Barnes,* 193 Mass. 21, 24. *Sullivan* v. *Crave & Martin Co.* 193 Mass. 435, 437. The law as to exceptions in criminal cases is the same as that in civil causes. R. L. c. 219, § 35; c. 173, § 106, as amended by St. 1911, c. 212.

What has been said disposes of all the exceptions respecting evidence which are open to the defendant and which seem to merit discussion. All of them are concluded adversely to his contentions by the principles to which reference has been made.

The presiding judge in his charge read copious extracts from the opinion of this court in *Commonwealth* v. *Tuckerman,* 10 Gray, 173, concluding with the statement, "Those statements, so far as they apply to the evidence in this case, I give you as the law in this case." The practice of stating the governing principles of law to a jury in the exact language of a decided case long has prevailed in this Commonwealth. *Post* v. *Leland,* 184 Mass. 601. It is the office of a charge to inform the jury plainly and intelligibly as to the rules of law applicable to the issues and evidence, and necessary or helpful to guide them to a just verdict. In performing this duty the trial judge in his discretion may use his own words or may quote from others. This is the general practice and has its foundation in practical wisdom. *People* v. *Niles,* (Cooley, J.,) 44 Mich. 606, 609. *People* v. *Breen,* 181 N. Y. 493. 12 Cyc. 614 and cases there cited. The conduct of the judge of the Superior Court is not open to the defendant's criticism that so many of the facts of the Tuckerman case were read as to prejudice the jury. Moreover, at the defendant's request his rights in this regard were guarded fully at the conclusion of the charge.

After verdict the defendant moved for an arrest of judgment on the ground in substance that the counts upon which he was convicted describe the same offenses as those upon which he was at the same time found not guilty, and that hence there is inconsistency and repugnancy in these several verdicts. He relies in this regard upon the verdicts of not guilty upon the counts charging larceny, and upon the fact that in response to his motion the Com-

monwealth filed specifications as to each of the twenty-four counts upon which he was convicted and as to each of the corresponding counts, describing the same acts as larceny, one of which specifications was in substantially the same words as the counts upon which he was convicted. But as has been pointed out earlier in this opinion, the offense described in R. L. c. 208, § 62, is a different offense from that described as larceny in § 26 of the same chapter, and which now includes as merged in that single crime the crimes formerly described as larceny, embezzlement and obtaining property by false pretenses. The penalty imposed is more severe in § 62. It may be that proof of the same acts would constitute an offense under either section. But where counts of such nature are combined in one indictment, a verdict of not guilty upon one count does not involve the same result as to all. It was said in *Commonwealth* v. *Edds*, 14 Gray, 406, 410: "The case as now presented is the common case of several counts introduced into one indictment, intending to charge the party with one offense, although charging it in different forms. In such case the whole evidence goes to the jury, and, when thus given to the jury at the same time, is to be applied as may be proper to one or the other of the counts; and it is competent and proper for the jury, having applied it to one of the counts, and thus exhausted its force by a verdict of guilty upon such count, to return a verdict of not guilty upon the other. Such verdict implies no contradiction, but only negatives the commission of two offenses." *Commonwealth* v. *Ismahl*, 134 Mass. 201. *Commonwealth* v. *Baldwin*, 213 Mass. 238. The case at bar is governed by a principle analogous to that thus stated. Different evidence would be required to prove the separate offenses set forth in these counts. The crime created by the statute under consideration, of which the defendant was found guilty, might be proved by evidence which would not establish larceny or embezzlement from the corporations.

The motion in arrest of judgment was denied rightly.

*Exceptions overruled.*

*F. Paul,* for the defendant.

*A. C. Webber,* Assistant District Attorney, for the Commonwealth.