[Civ. No. 23285.   Second Dist., Div. Three.   Dec. 31, 1958.]

CAESAR BRATTA et al., Appellants, v. CARUSO CAR COMPANY, INC. (a Corporation) et al., Respondents.

Arnett L. Hartsfield, Jr., and Margolis, McTernan & Branton for Appellants.

Cecil W. Collins and Jack B. Tenney for Respondents.

PATROSSO, J. pro tem.*—Plaintiffs appeal from an adverse judgment in an action instituted to rescind a conditional sales contract for the purchase of an automobile executed between the plaintiffs and defendant Caruso Car Company, Inc., which contract was subsequently assigned to the defend-

*Assigned by Chairman of Judicial Council.

ant Commercial Credit Corporation. The sole question presented is whether the contract in question conforms to the requirements of section 2982 of the Civil Code.

On August 19, 1956, appellants entered into a written agreement with respondent Caruso for the purchase of a used 1956 Plymouth automobile. As part of the transaction the appellants traded in a 1953 Ford convertible for which they were given credit in the sum of $920. The conditional sales contract executed between the parties contained among other things the following provisions:

"1. Cash Delivered Price (Including any sales tax and extra equipment) License $27 ........................ $3,661.80
"2. Down Payment: Cash ............. $300.00
Trade-in: ........................ $———
Make      Ford      Year      1953
Model No. BPC1002865
Amount Owing on Trade-in ........ $———
Purchaser's Equity in Trade-in ..... $920.00
Total Down Payment ..................... $1,220.00
"3. Amount Unpaid on Cash Price .............. $2,441.80
"6. Amount of Unpaid Balance ................. $2,441.80
"7. Time Price Differential (Finance Charge) .... 611.00
"8. Contract Balance (Purchaser's Obligation) ... $3,052.80

"Payable in 36 equal consecutive monthly instalments of $84.80 each, the first instalment payable October 4, 1956."

In truth and in fact appellants did not pay $300 or any sum in cash as recited in the contract but they executed a promissory note in this amount payable to the respondent Caruso, it being agreed at the time between the parties that the appellants would procure a loan elsewhere in a sufficient amount to pay the note. Caruso referred the appellants to the Public Finance Company in Glendale for the purpose of securing such a loan and in this connection prepared a confidential credit application which was executed by the appellants and which they were directed to take to the office of the Finance Company. In accordance therewith, appellants delivered such application to the Finance Company and were later advised that it would make a loan of $300 to the appellants provided they executed a promissory note in the sum of $475 payable in 19 monthly instalments of $25 each and secured the same by a lien upon appellant's household furniture. The appellants refused to accept the loan upon these terms and on August 31, 1956, gave notice of rescission of the contract to

the respondents wherein they offered to return the automobile purchased upon return to them of the Ford automobile which they had transferred to Caruso. Respondents refused to consent to a rescission and the appellants refusing to make any payments on the contract, the automobile was repossessed on November 23, 1956, following which the present action was instituted.

Civil Code, section 2982, as it read at the time of the execution of the contract here in question provided in part as follows: ''(a) Every conditional sale contract for the sale of a motor vehicle, with or without accessories, shall be in writing and shall contain all of the agreements between the buyer and seller relating to the personal property described therein. It shall be signed by the buyer or his authorized representative and by the seller or its authorized representative, and when so executed an exact copy thereof shall be delivered by the seller to the buyer at the time of its execution. It shall recite the following separate items as such, in the following order: 1. The cash price of the personal property described in the conditional sale contract. 2. The amount of the buyer's down payment, and whether made in cash or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for cash and for such property. 3. The amount unpaid on the cash price, which is the difference between Items 1 and 2.''

It is now well settled that section 2982 was enacted for the benefit and protection of purchasers of motor vehicles under conditional sale contracts; that such contracts not conforming to the requirements thereof are illegal and as a purchaser is not to be regarded *in pari delicto* with the seller he may rescind the contract. (*Carter* v. *Seaboard Finance Co.* (1949), 33 Cal.2d 564, 573 [203 P.2d 758]; *Lewis* v. *Muntz Car Co.* (1958), 50 Cal.2d 681, 684 [328 P.2d 968].)

The requirement of the statute that such conditional sale contracts contain the statements therein specified necessarily implies that such statements when set forth in the contract shall be true for otherwise the very purpose of the statute would be defeated. Here it is admitted that the appellants did not pay as part of the down payment the sum of $300 in cash as recited in the contract but only executed a promissory note in this amount. There is nothing to suggest that the word ''cash'' in the statute is used in any other than its usually understood meaning of money. (*People* v. *Quiel* (1945), 68 Cal.App.2d 674, 678 [157 P.2d 446]; *Estate of*

*Chamberlain* (1942), 56 Cal.App.2d 458, 463 [132 P.2d 488].)
In the case last cited the court said: "Solvent credits are not
cash in the ordinary understanding of the latter term. Upon
the former appeal it was said, 'Cash is "current money in
hand or readily available." ' (46 Cal.App.2d 16, at p. 20.)
The court there approved of another definition reading,
' "Cash" means especially "ready money" at command, sub-
ject to free disposal; not tied up in a fixed state. It is almost
the equivalent of "loose money." ' Bouvier's Law Dictionary,
Rawles' 3d edition, defines 'cash' as 'That which circulates as
money, including bank bills but not mere bills receivable.' The
money represented by the notes of the corporation and also
by the book credits was available for distribution to the bene-
ficiaries not upon demand but upon its receipt by the trust
from the corporation and upon the decision of the trustees to
make distribution. How or when the corporation's notes to the
syndicate were payable does not appear. *Promissory notes
cannot be treated as cash* in the construction of a will except
where the language of the will shows that the testator con-
sidered them to be cash and disposed of them as such. Other-
wise, as held on the first appeal, the word 'cash' should be
given its common and ordinary meaning." (Emphasis added.)

The promise of appellants as evidenced by the execution
of the promissory note is no more "cash" than their promise
in the contract to pay the balance of the contract price as
therein set forth in installments. Each is a mere promise to
pay and such a promise does not constitute "cash" within the
meaning of the statute. (*Estate of Chamberlain, supra*; *Pierce
v. Bryant*, 87 Mass. (5 Allen) 91, 93; *State v. Moore*, 48 Neb.
870 [67 N.W. 876, 878]; *Palliser v. United States*, 136 U.S.
257, 263 [10 S.Ct. 1034, 34 L.Ed. 514, 517]; *Citizens' Nat.
Bank of Stamford v. Stevenson*, (Tex.) 211 S.W. 644, 645;
*Commonwealth v. Dow*, 217 Mass. 473 [105 N.E. 995, 998];
*Fidelity Savings State Bank v. Grimes*, 156 Kan. 55 [131 P.2d
894, 896].)

Respondents point to subdivision (f) of section 2981
of the Civil Code which defines "down payment" as follows:
"(f) *'Down Payment'* shall mean that part of the cash price
which the buyer pays or agrees to pay to the seller in cash or
property value or money's worth at or prior to delivery by
the seller to the buyer of the personal property described in
the conditional sale contract."

From this they argue that the promissory note executed by
the appellants was "money's worth" but it is apparent from

a mere reading of this provision that it distinguishes between "cash" and "money's worth." ■ Likewise subdivision 2 of section 2982 hereinabove quoted distinguishes between "cash" and "money's worth" for it requires a separate statement in the contract as to what portion of the down payment is made "in cash" and that "represented by the net agreed value of described property traded in" and subdivision 3 of the same section requires a statement of "the amount unpaid on the cash price." ■ Thus the contract here violates both subdivisions 2 and 3 of section 2982 as it falsely states that the amount of $300 had been paid in cash as well as the unpaid balance of the cash price, for after crediting appellants with the value of their trade-in there remained unpaid upon the cash price of $3,661.80 not $2,441.80 as stated in the contract but the sum of $2,741.80, of which latter sum $300 was evidenced by the appellants' promissory note.

■ Respondents next argue that whether the promissory note was given and accepted as payment by the respondent Caruso was a question of fact and in this connection they refer to the trial court's finding that the note was given "in lieu of $300 cash as part of the down-payment." However, it is immaterial whether or not Caruso accepted the note as payment for the fact remains that it was not "cash" as stated in the contract, and if, as the trial court found, the note was accepted "in lieu of $300 cash" it is clear that the note was something other than cash. Moreover, Mr. Guccione, the general manager of the used car department of Caruso who was called as a witness for the respondents testified that the note was not taken in part payment of the car.

■ Respondents also contend that because the appellants promised to secure a loan from the proceeds of which they agreed to pay their note they are before the court with unclean hands and hence barred from securing the relief which they seek. The ready answer is, as previously pointed out, that appellants are not deemed to be *in pari delicto* with the respondents and hence are not precluded from urging the illegality of the contract.

■ Respondents further contend that by virtue of section 1642 of the Civil Code the conditional sale contract and the promissory note "are to be taken together and interpreted as a single contract." From this premise they argue that as the "purpose of the statute is to protect purchasers of motor vehicles against excessive charges by requiring full disclosure of all items of cost" the requirement of the statute is met

because when the contract and note are read together all items of cost are fully disclosed. The plain language of section 2982, however, discloses that it was the Legislature's purpose to require "all of the agreements between the buyer and the seller" to be set forth in the conditional sale contract. Indeed if respondents' contention in this regard were accepted the statute could be nullified by the simple device, as was done here, of stating in the conditional sale contract that the unpaid balance of the purchase price was $2,441.80 payable in a certain number of monthly installments whereas in truth the unpaid balance was $2,741.80.

Finally respondents contend that section 2982 "is a shield . . . and not a sword" and inasmuch as the appellants "were fully informed of their total obligations involved in the transaction, and they understood the full significance of their agreement"[1] they were in no way deceived or misled with respect thereto. This may be conceded but the concession does not aid the respondents. The Supreme Court has declared that the "prescribed form and requisites" of section 2982 are mandatory and that the failure of a seller to comply therewith renders the contract unenforceable. (*Carter* v. *Seaboard Finance Co., supra.*)

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.

---

[1] It may be noted that, although the assistant manager of Caruso testified that when he referred appellants to the Public Finance Company he knew that in order to secure a loan of $300 from that company they would be required to execute a note for approximately $475 if the loan were repayable in 19 monthly installments, it does not appear that he so informed the appellants. Thus, it may well be doubted if it can be said that the appellants "were fully informed of their total obligations involved in the transaction, and they understood the full significance of their agreement."