Filed 8/16/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MICHELLE M. NICHOLS, | B266465 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC522888) |
| v. | |
| CENTURY WEST, LLC et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, C. Edward Simpson, Judge. Affirmed.

Rosner, Barry & Babbitt, Christopher P. Barry and Lacee B. Smith for Plaintiff and Appellant.

James G. Lewis for Defendant and Respondent Century West.

Caley & Associates, Christopher M. Domin and Rebecca A. Caley for Defendant and Respondent BMW Financial Services.

## INTRODUCTION

Plaintiff Michelle Nichols purchased a car from defendant Century West, LLC using three checks as a down payment. Two of the checks were dated the day after the contract was signed, and one check was dated about two weeks later. After owning the car for eleven months, Nichols sued Century West and defendant BMW Financial Services NA, LLC, which financed the vehicle, seeking to unwind the contract. Nichols's evidence at trial focused mostly on whether she received a fair deal for her trade-in vehicle, a new car she had leased one month earlier. Following a bench trial, the court found in favor of defendants.

On appeal, Nichols's sole argument is that because Century West entered her three-check down payment on the line of the sales contract describing it a down payment, rather than on the line describing it as a "deferred" down payment, she has the right to rescind the contract under the Rees-Levering Motor Vehicle Sales and Finance Act (Civil Code, § 2981, et seq.[1]) (the Act). We affirm the judgment. Neither the language of the Act nor the cases Nichols cites compel a finding that a car dealer's informal agreement to wait to deposit a check tendered the day of the purchase—as opposed to scheduling a payment to be made at a later date—constitutes a "deferred" down payment. Nichols therefore has not demonstrated that the Act authorizes her to rescind the contract under the circumstances here.

## FACTUAL AND PROCEDURAL BACKGROUND

This case involves two different vehicle transactions: first a lease, and then a sale. Only the sale is relevant to the appeal, but several of Nichols's causes of action were based on issues related to the lease.[2] We discuss the lease here only for context, and

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.
[2] Nichols also sued defendants for violations of the Song-Beverly Consumer Warranty Act (§ 1790, et seq.), violations of the Consumer Legal Remedies Act (§ 1750, et seq.), unlawful business practices (Bus. & Prof. Code, § 17200), fraudulent misrepresentation, negligent misrepresentation, and a violation of Vehicle Code section 11711.

focus on the evidence and argument relevant to the appeal. The following facts were presented to the trial court at a bench trial.

Nichols testified that in September 2012, she had a BMW 640 she had leased the previous January. She decided that "the 640 was a little small for me," and in late September 2012, she went to Century West to look for a new car with her boyfriend, Claudio Torres. Nichols knew she was "upside down" on the 640, meaning she owed about $5,000 more than the car was currently worth. Nichols leased a new BMW 750Li, but because it was a larger car, she was concerned it might not fit into her garage. When she got home, she found that the 750Li in fact did not fit into her garage.

Nevertheless, Nichols and Torres drove the 750Li for nearly a month, putting about 1,700 miles on the car. They then took it back to Century West to exchange it for another car. Much of the trial focused on whether Nichols had been told when she leased the 750Li that she could return it. When Nichols took the 750Li back to Century West, employees told her that she could not return the car after using it for a month, but she could trade it in for a different car. However, the car had depreciated considerably in the month Nichols had leased it, so she was further "upside down" on the next transaction because the trade-in value of the 750Li was less than what she owed on the lease.

Nichols and Century West entered into a contract on October 26, 2012 for Nichols to purchase a BMW X6. Nichols agreed to pay a $3,000 down payment, and provided Century West with three checks: one check for $1,000, dated October 27, 2012 from Medilogic, Inc., Torres's company; one check for $1,000, dated October 27, 2012, from Carmen Torres Interpreting, Torres's mother's business; and one check for $1,000, dated November 9, 2012, also from Carmen Torres Interpreting. The general manager of Century West, Edelmiro Rosas, knew Torres's father; Rosas testified that as a favor to Torres, he agreed to allow Nichols to pay with three checks and to hold those checks briefly before depositing them. Rosas testified that Century West rarely held checks for customers. He also testified that according to his understanding, there was no legal requirement that the dealership deposit checks within any particular time frame after receiving them.

3

The contract for the BMW X6 was a pre-printed, fill-in-the-blanks form, which included the following section with the underlined parts filled in:

"6. Total Downpayment

A.      Agreed Trade-In Value  Yr 2012  Make BMW  $ 70000.00

        Model  7 Series  Odom 1771

        VIN  [_]

B.      Less Prior Credit or Lease Balance $ 84585.00

C.      Net Trade-in (A less B) (indicate if a negative number) $ -14585.00

D.      Deferred Downpayment  $ N/A

E.      Manufacturer's Rebate  $ 750

F.      Other N/A  $ N/A

G.      Cash  $ 3000.00

Total Downpayment (C through G) $ 0.00"[3]

Gary Weisberg, a finance manager for Century West, testified that all checks are typically listed on purchase contracts as cash:  "There [are] no separate lines on a purchase order to call something a check or a cashier's check or cash, whatever.  All down payments are cash."

Nichols testified that she did not read the contract for the X6 the day she purchased the car.  She testified in her deposition, which was read at trial, that her only concern about the contract was that the monthly payments remained relatively consistent from the 640, to the 750Li, to the X6.  She was not concerned about the other terms of the contract.  In her complaint, Nichols stated that she was unaware that Century West listed the down payment checks as a down payment until her attorneys looked at the contract in 2013.

Century West submitted the three down payment checks to the bank on November 9, but the two $1,000 checks from Carmen Torres Interpreting were returned unpaid. Century West called Nichols about the returned checks sometime in November; she was

_____

[3] Section 2982, subd. (a)(6)(G) requires the "total downpayment" to be listed as zero when the down payment amount, including trade-in value, is a negative number.

4

with Torres when she received the call. Torres provided Century West with a bank account number to charge $500 of the down payment. The rest of the down payment remained unpaid, and in March 2013 Century West filed a small-claims lawsuit against Nichols seeking the remaining $1,500. Nichols testified that she paid the $1,500 as soon as she was served with the complaint in the small-claims action.

Nichols's monthly car payments were to be made to BMW Financial. Nichols made the payments over the phone from Torres's Medilogic checking account number until September 2014, when Nichols began making the payments from her personal checking account. Nichols testified that at the time of trial in March 2015, the X6 currently had 40,000 miles on it.

In closing arguments, Nichols's counsel asserted that various violations of the Act had been proved. Counsel stated that there was a "failure to disclose a deferred down payment," since "some or all of the checks were agreed to be held until November 9th." This was the basis for two different code section violations: "2982[(a)(6)(D)], which requires disclosure for deferred down payment, and 2982(c), which requires that the [deferred down] payment schedule be disclosed in the contract." Nichols's counsel reasoned, "If the checks were being held to a particular date, there is a payment scheduled in the cont[r]act where it should say payment of $1,000 on November 9th." Counsel argued that it did not matter whether Nichols asked that the checks be held, because "the statute places the burden on the dealership to make a proper disclosure."

Nichols's attorney also argued, "If the court were to somehow conclude that a hold check is different from a deferred down payment,[4] we nevertheless still believe the Automobile Sales Finance Act is violated because the agreement to hold the checks would violate the single document rule. The single document rule in section 2981.9 requires all agreements of the buyer and seller with respect to the terms of the payment be

---

4 There was some confusion over the terminology used at trial. At one point during trial, the court asked counsel, "Are you using the words deferred down payment and a check being held as being interchangeable?" Plaintiff's counsel answered, "Plaintiff is, yes." Counsel for Century West said, "Plaintiff is; we're not."

5

disclosed in the contract, and this contract does not disclose the agreement that down payment checks will be held to a certain date."

Counsel continued, "[T]he failure to itemize the deferred down payment and the violation of the single document rule are violations of the statute that entitle the consumer under 2983 and 2983.1 to rescind the contract, and that is the remedy that Ms. Nichols seeks for that violation. The dollar figure that we put on that is the $3,000 down payment, 27 payments of $1,291.79, and one payment of $591.79 for a total of $38,470.12. And then under recision [sic], she would return the vehicle, and the dealership would be obligated to pay off the remainder of the contract to BMW Financial."

Counsel for Century West argued in closing, "The tender of a check . . . appears to be a payment. There is no agreement for a subsequent payment date." He also argued, "[A]ll three checks were cashed on the ninth of November. . . . There is no law that says you have to deposit them right away. If a dealer takes a deposit and doesn't deposit it right away but holds it for even a month before he deposits it, does that become part of a deferred down payment?" Counsel for defendant BMW Finance, which financed the loan, argued that it could not be liable because it did not prepare the contract.

Two weeks after the trial, the court issued a tentative decision. The court found for defendants on all of Nichols's claims relating to both the lease of the 750Li and the sale of the X6. In the portion of the tentative decision relevant to this appeal, the court stated, "Plaintiff provided no evidence that the holding of the checks affected any aspect of the purchase transaction. It did not increase the purchase price, the amount financed, the annual percentage rate, monthly payments, payment schedule or the balloon final payment. Indeed, it was the dealer who lost the use of the funds for the period of time held and the subsequent period until they were all fully collected." The court discussed two cases Nichols cited relating to deferred down payments under the Act, *Rojas v. Platinum Auto Group* (2013) 212 Cal.App.4th 997 (*Rojas*) and *Munoz v. Express Auto Sales* (2014) 222 Cal.App.4th Supp. 1 (*Munoz*), both of which are discussed more fully below. The court held that while those cases involved down payments that were made in

6

installments, here "plaintiff clearly made her $3,000 down payment at the time of purchase" and "there was nothing further for her to do." The court concluded, "Absent legal authority that a dealer's agreement to hold a check for a period of time or accept a post-dated check constitutes a deferred payment, the court finds in favor of defendants."

Nichols objected to the tentative statement of decision, and cited *Highway Trailer of Cal., Inc. v. Frankel* (1967) 250 Cal.App.2d 733(*Highway Trailer*) (discussed more fully below), which held that a post-dated check that was not accurately represented in a contract should not have been listed as a "cash" down payment. Nichols concluded, "Thus, there is legal authority directly on point that a post-dated check is a deferred down payment under the Automobile Sales Finance Act." Defendants filed responses pursuant to the court's request for further briefing, and the trial court issued a "further tentative decision." In it, the court noted that *Highway Trailer* had not been cited by any other court in the 48 years since it was published. It also observed that *Highway Trailer* relied on an earlier version of the Act in which deferred down payments were not mentioned. The court stated that its tentative ruling would not change based on Nichols's citation to *Highway Trailer*.

The court entered judgment for defendants, and Nichols appealed.

## STANDARD OF REVIEW

Nichols argues that "the trial court's refusal to enforce the Automobile Sales Finance Act's disclosure requirements is a legal error requiring reversal." This case therefore presents a question of statutory interpretation, which we consider de novo. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387.) In any case involving statutory interpretation, our fundamental task is to determine and effectuate the Legislature's intent. (*Lennane v. Franchise Tax Bd*. (1994) 9 Cal.4th 263, 268; *People v. Murphy* (2001) 25 Cal.4th 136, 142.) "We consider the ordinary meaning of the statutory language, its relationship to the text of related provisions, terms used elsewhere in the statute, and the overarching structure of the statutory scheme." (*Winn v. Pioneer Medical Group, Inc*. (2016) 63 Cal.4th 148, 155-156.) If there is no ambiguity in the statutory language, the plain meaning controls. (*Lennane*, 9 Cal.4th at p. 268.) "When the

7

language of a statutory provision remains opaque after we consider its text, the statute's structure, and related statutory provisions, we may take account of extrinsic sources—such as legislative history—to assist us in discerning the Legislature's purpose." (*Winn*, *supra*, 63 Cal.4th at p. 156.)

## DISCUSSION

Nichols contends that because her down payment checks were post-dated, and Century West did not list them on the contract as a deferred down payment, Century West violated the Act and the contract must be rescinded. (See § 2983, subd. (a) ["[I]f the seller, except as the result of an accidental or bona fide error in computation, violates any provision of 2981.9 or of subdivision (a), (j), or (k) of Section 2982, the conditional sale contract shall not be enforceable. . . ."].) The statute does not support Nichols's argument.

Section 2981 provides definitions for the Act. It includes the following definition: "'Downpayment' means a payment that the buyer pays or agrees to pay to the seller in cash or property value or money's worth at or prior to delivery by the seller to the buyer of the motor vehicle described in the conditional sale contract. The term shall also include the amount of any portion of the downpayment the payment of which is deferred until not later than the due date of the second otherwise scheduled payment, if the amount of the deferred downpayment is not subject to a finance charge. The term does not include any administrative finance charge charged, received or collected by the seller as provided in this chapter." (§ 2981, subd. (f).)

Section 2982 sets out the "[f]ormalities of conditional sales contracts."[5] That statute requires "[t]he amount of the buyer's downpayment" to be "itemized to show the following: . . . The amount of any portion of the downpayment to be deferred until not later than the due date of the second regularly scheduled installment under the contract

---

[5] A "conditional sales contract," such as the one here, is a "contract for the sale of a motor vehicle between a buyer and a seller, with or without accessories, under which possession is delivered to the buyer and . . . [t]he title vests in the buyer thereafter only upon the payment of all or a part of the price, or the performance of any other condition." (§ 2981, subd. (a)(1)(A).)

8

and that is not subject to a finance charge." (§ 2982, subd. (a)(6)(D).)[6] "If payment of all or a portion of the downpayment is to be deferred, the deferred payment shall be reflected in the payment schedule disclosed pursuant to Regulation Z."[7] (§2982, subd. (c).)

On October 26, 2012, the day she purchased the X6, Nichols provided Century West with three checks: two checks for $1,000, dated October 27, 2012, and one check for $1,000, dated November 9, 2012. Nichols's monthly payments were set to begin on November 25, 2012, so none of the checks was deferred to "later than the due date of the

_____

[6] The complete text of section 2982, subdivision (a)(6) is as follows:

"(a) The contract shall contain the following disclosures, as applicable, which shall be labeled 'itemization of the amount financed':

\* \* \*

(6)The amount of the buyer's downpayment itemized to show the following:

(A) The agreed value of the property being traded in.

(B) The prior credit or lease balance, if any, owing on the property being traded in.

(C) The net agreed value of the property being traded in, which is the difference between the amounts disclosed in subparagraphs (A) and (B). If the prior credit or lease balance of the property being traded in exceeds the agreed value of the property, a negative number shall be stated.

(D) The amount of any portion of the downpayment to be deferred until not later than the due date of the second regularly scheduled installment under the contract and that is not subject to a finance charge.

(E) The amount of any manufacturer's rebate applied or to be applied to the downpayment.

(F) The remaining amount paid or to be paid by the buyer as a downpayment.

(G) The total downpayment. If the sum of subparagraphs (C) to (F), inclusive, is zero or more, that sum shall be stated as the total downpayment, and no amount shall be stated as the prior credit or lease balance under subparagraph (I) of paragraph (1). If the sum of subparagraphs (C) to (F), inclusive, is less than zero, then that sum, expressed as a positive number, shall be stated as the prior credit or lease balance under subparagraph (I) of paragraph (1), and zero shall be stated as the total downpayment. The disclosure required by this subparagraph shall be labeled 'total downpayment' and shall contain a descriptor indicating that if the total downpayment is a negative number, a zero shall be disclosed as the total downpayment and a reference made that the remainder shall be included in the disclosure required pursuant to subparagraph (I) of paragraph (1) [relating to the amount charged for a service contract]."

[7] Regulation Z is a regulation promulgated under the federal Truth in Lending Act, 15 U.S.C. § 1601, et seq. (See § 2981, subd. (m).)

9

second otherwise scheduled payment." All three checks therefore fell under the definition of "downpayment" in section 2981, subdivision (f).

The question presented, therefore, is whether down payment checks provided to the seller on the date of purchase—as opposed to payments scheduled to be made at a later date—are "deferred" down payments. The Act does not include any definition for "deferred." As such, nothing in the language of the statute barred Century West from accepting checks on the date of purchase and agreeing to deposit them later. Similarly, the language of the statute does not require such checks to be categorized as "deferred" payments.

Because the statute does not provide guidance on the definition of "deferred," we may consider other sources. When "statutory terms are ambiguous . . . we may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citiation.] In such circumstances, we ""select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' [Citations.]" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)

Turning to the Legislature's intentions behind the Act, it is clear that the Act "was designed to provide . . . comprehensive protection for the unsophisticated motor vehicle consumer."[8] (*Hernandez v. Atlantic Finance Co*. (1980) 105 Cal.App.3d 65, 69.) "[A]mong other things," the Act "requires a person selling or leasing a motor vehicle under a conditional sale contract to disclose certain information to a buyer." (Legis. Council's Dig., Assem. Bill No. 238 (2011-2012 Reg. Sess.) Feb. 3, 2011.) The parties have not pointed us to anything in the legislative history to suggest that the Legislature

[8] Defendant BMW Financial cites this language to argue that the Act should not apply to Nichols, because she was not an unsophisticated purchaser. Nichols testified that before leasing the BMW 640 in January 2012, she had leased a BMW 528 in March 2010, a Mercedes CLS 550 in December 2007, and a Mercedes CLA 500 in August 2006. Although the Act is intended to protect unsophisticated vehicle consumers, nothing in the Act suggests that its protections do not apply equally to all vehicle consumers.

adopted any particular definition of the term "deferred down payment." The legislative history therefore does not provide guidance on the issue before us.

Nichols cites four cases involving various versions of the Act to support her position that her checks constituted a deferred down payment. The earliest case is *Bratta v. Caruso Car Co.* (1958) 166 Cal.App.2d 661 (*Bratta*), in which the plaintiffs contracted to purchase a car from a dealership defendant, and the contract stated that the plaintiffs made a $300 cash down payment. In fact, the plaintiffs "did not pay $300 or any sum in cash" as a down payment, but instead "executed a promissory note in this amount" and agreed with the defendant that plaintiffs "would procure a loan elsewhere in a sufficient amount to pay the note." (*Id*. at p. 663.) The court noted that section 2982 required a contract to reflect the "'amount of the buyer's down payment, and whether made in cash or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for cash and for such property.'" (*Id*. at p. 664.) The court held that the plaintiffs' promissory note was not properly categorized: "The promise of appellants as evidenced by the execution of the promissory note is no more 'cash' than their promise in the contract to pay the balance of the contract price as therein set forth in installments. Each is a mere promise to pay and such a promise does not constitute 'cash' within the meaning of the statute." (*Id*. at p. 665.) The court held that the contract was unenforceable because it did not comply with the requirements of section 2982. (*Id*. at p. 667.)

The court in *Highway Trailer of Cal., Inc. v. Frankel*, *supra*, 250 Cal.App.2d 733 relied on the holding of *Bratta*. There, the defendant agreed to purchase two trailers from the plaintiff, and they entered into separate contracts for each trailer. Each contract stated that the defendant had made a cash down payment of $700. The defendant submitted three checks: a $200 check dated two days before the contracts were signed, a $1,000 check dated the same day as the contracts, and a $200 check dated the day after the contracts. The court characterized the question before it as follows: "Did the checks constitute two cash payments of $700? . . . If they did not, did that fact render the contracts so invalid that the plaintiff may not recover them?" (*Id*., p. 734.) The court

11

noted that the version of section 2982 at issue when the contracts were signed required a contract to state "'[t]he amount of the buyer's down payment, and whether made *in cash* or represented by the net agreed value of described property traded in, or both, together with a statement of the respective amounts credited for *cash* and for such property. . . .'" (*Ibid*., emphasis in *Highway Trailer*.)  The court discussed the holding in *Bratta* that a promise to pay at a later date should not be characterized as cash, and concluded, "Assuming, without deciding, that a currently dated check, drawn on an account having sufficient funds to pay it, is 'cash' within the meaning and intent of section 2982, certainly a post-dated check is not 'cash' within that meaning and intent, being no better than any other promise to pay in the future." (*Highway Trailer*, *supra*, 250 Cal.App.2d at p. 736.)  The court concluded, "Since the [post-dated] $200 check dated February 25, 1961 (and not actually cashed until March 1, 1961) was, so far as this record discloses, applied to the two contracts without separate allocation, it follows that the statement in each contract that the down payment was $700 in cash was incorrect and that contracts so phrased violated section 2982." (*Ibid*.)

Nichols argues that because *Highway Trailer* held that the post-dated $200 check was simply a "promise to pay," any post-dated check necessarily must be a deferred down payment under the Act.  But *Highway Trailer* does not support this dichotomy. *Highway Trailer* did not discuss the definition of a deferred down payment, and therefore it does not speak to the proper definition of that phrase within the Act.  (See *In re Chavez* (2003) 30 Cal.4th 643, 656 ["As is well established, a case is authority only for a proposition actually considered and decided therein."].)  Moreover, the court in *Highway Trailer* decided the contract case before it; the court was not stating new law or policy about how post-dated checks should be treated under the Act.  (See *McGee v. Superior Court* (1985) 176 Cal.App.3d 221, 226 ["The holding of a decision is limited by the facts of the case being decided, notwithstanding the use of overly broad language by the court in stating the issue before it or its holding or in its reasoning."].)  In addition, we have found no other law or case suggesting that whether a check may be characterized as a

12

down payment depends on the date of the check.[9] To the extent *Highway Trailer* can be read to suggest that a post-dated check, as a matter of law, cannot be listed on a contract as a down payment under the Act, we disagree.

Nichols also cites *Rojas v. Platinum Auto Group*, *supra*, 212 Cal.App.4th 997. In that case, the plaintiff purchased a car with no cash down; instead, he paid his $2,000 down payment in four installments over a period of about three months. (*Id*. at p. 999.) On the sales contract, the dealership entered $2,000 on the "total downpayment" line, instead of listing it on the line for a deferred down payment. (*Id*. at p. 1000.) The plaintiff sued under the Act, alleging that the down payment was improperly categorized on his contract. The trial court sustained the defendant dealership's demurrer, finding that placing the down payment on the wrong line was trivial and caused the plaintiff no actual loss. (*Id*. at p. 1001.) The Court of Appeal reversed, finding that the down payment should have been characterized as deferred instead of a regular down payment: "Because the Legislature drew the distinction [in the Act], we cannot conflate the two types of down payments as if they are one and the same." (*Id*. at p. 1003.) The court also noted that the amount of down payment listed on the contract was wrong, because the plaintiff's payments toward the down payment were not completed by "the due date of the second otherwise scheduled payment." The last payment therefore did not satisfy the definition of a down payment in section 2981, subdivision (f), nor was it a deferred down payment under section 2982, subdivision (a)(6)(D). (*Ibid*.) The court held that even though plaintiff had not suffered damages as a result of these errors, the plaintiff had stated a claim for relief under the Act and the demurrer should have been overruled. (*Id*. at p. 1005.)

Nichols also relies on *Munoz v. Express Auto Sales*, *supra*, 222 Cal.App.4th Supp. 1, a case from the Appellate Division of the Los Angeles Superior Court. In that case, the

---

[9] Section 2982, subdivision (b), states that "no particular terminology is required to disclose the items set forth in subdivision (a) except as expressly provided in that subdivision." Certain items throughout subdivision (a) specifically state that they "shall be labeled" in a certain way. Neither "cash" nor "check" is included as required language.

plaintiffs purchased a car with a down payment of $3,000: "The downpayment consisted of $1,500 paid by check at the time of the sale, $1,000 for a [trade-in car], and two $250 deferred cash payments which would be made by plaintiffs within a month." (*Id*. at p. 5.) The contract listed the entire $3,000 down payment as cash, while "[s]ections in paragraph 6 that allowed information regarding any trade-in vehicle, including the vehicle's agreed trade-in value, its model and make, were left blank. The value of the trade-in, as well as the amount of any deferred downpayment, was listed as '$0.00.'" (*Ibid*.) At the behest of plaintiffs' counsel, the dealer corrected the error. Plaintiffs sued and the trial court entered judgment for the defendants. The Appellate Division reversed, because according to section 2984, the correction of any "willful" error in a contract must be made within 30 days of the execution of the contract; only an inadvertent error may be corrected later. (§ 2984.) Because the trial court had not made any determination as to whether the error was willful or inadvertent, the Appellate Division held that the judgment in favor of defendants should be reversed. (*Munoz*, *supra*, 222 Cal.App.4th Supp. at p. 10.)

None of these cases offers guidance on whether post-dated checks provided to a dealership at the time of a sale should be categorized as "deferred" down payments in a contract under the Act instead of as regular down payments. The circumstances here, where Nichols provided Century West with checks on the day she purchased the X6, are unlike those in *Rojas* and *Munoz*, in which the buyers paid portions of their down payments at later dates. Moreover, unlike the circumstances in *Bratta*, *Highway Trailer*, *Rojas*, and *Munoz*, the contract's notation of $3,000 as the down payment for the X6 accurately stated the parties' understanding as to the down payment Nichols was making for the X6, and matched the amount on the checks Nichols provided on the day she purchased the X6.

Even under de novo review, it is the appellant's responsibility to affirmatively demonstrate error. (See *Mark Tanner Construction, Inc. v. HUB Internat. Ins. Services, Inc*. (2014) 224 Cal.App.4th 574, 583-584.) While it is arguable that a post-dated check could be categorized as a "deferred" down payment rather than a down payment, neither

14

the statutory language, legislative history, nor the case law compels such a result. The Act is intended to include complete and accurate disclosures about vehicle financing, and here the contract accurately stated the parties' understanding, the amount of the down payment, the amount of the trade-in, and the amount financed. We therefore find no error in the trial court's rejection of Nichols's argument that the contract violated the Act by listing the three-check down payment as a down payment rather than a deferred down payment. Nichols is therefore not entitled to unwind the contract based on alleged violations of section 2982, subdivisions (a)(6)(D) or (c).

Nichols also argues that the contract violated the single document rule in section 2981.9: "Every conditional sale contract subject to this chapter shall be in writing and . . . shall contain in a single document all of the agreements of the buyer and seller with respect to the total cost and the terms of payment for the motor vehicle, including any promissory notes or any other evidences of indebtedness." Nichols argues that because she and Century West agreed that at least one of her checks would not be deposited until November 9, and that agreement was not stated in the contract, the contract violated the single document rule. She reasons that "[w]hen a payment is due is a 'term of payment,'" and therefore the dates the checks were to be deposited should have been disclosed as a "term of payment" under section 2981.9. She concludes, "Because the Contract does not accurately disclose the true amount of the cash down payment, or the amount of or timing of the deferred down payments, and the information cannot be learned from the single Contract, the Contract violates the [Act's] single document rule."

We have found no authority supporting Nichols's assertion that an informal agreement to accommodate a customer by not immediately depositing a check constitutes a "term of payment" requiring disclosure under section 2981.9. As stated above, when Nichols provided her $3,000 down payment checks to Century West, no further down payment was due from Nichols. Nichols and Century West did not reach any agreement that Nichols was to pay an additional down payment at a later date. Moreover, nothing in the history or stated purposes of the Act suggests that the Act was intended to allow a buyer to rescind a contract where a dealer has accommodated a buyer's request to hold a

15

down payment check for a few days. And to the extent Nichols's argument rests on the assumption that the checks constituted a deferred down payment and should have been listed in the contract as such, her argument fails for the reasons stated above.[10]

In sum, nothing in the Act compels a finding that an informal agreement to hold down payment checks provided to a dealership at the time of the contract makes the down payment a "deferred" down payment under the Act. The trial court therefore did not err when it ruled in favor of defendants on Nichols's claim under the Act.

## DISPOSITION

The judgment is affirmed. Defendants are entitled to their costs on appeal.

## CERTIFIED FOR PUBLICATION

COLLINS, J.

We concur:

EPSTEIN, P. J.

MANELLA, J.

---

[10] BMW Financial asks that if we reverse and remand the case, we should instruct the court to rule on BMW Financial's motion for nonsuit, which the court did not decide. Because we are affirming the judgment, we do not reach this issue.

16